**M. by his parents R. and S., Plaintiff,**

v.

**BOARD OF EDUCATION BALL–CHATHAM COMMUNITY UNIT SCHOOL DISTRICT NO. 5, CHATHAM, ILLINOIS, et al., Defendants.**

Civ. No. 77–3035.

United States District Court,
S. D. Illinois, S. D.

March 16, 1977.

Ronald L. Maksym, Mary Lee Leahy, Andrew J. Leahy, Springfield, Ill., for plaintiff.

Alfred B. LaBarre, Springfield, Ill., for defendants.

## MEMORANDUM ORDER

ACKERMAN, District Judge.

Plaintiff M., a third year student at Glenwood Senior High School, by his parents R and S, brings this action under 42 U.S.C. § 1983 for redress of alleged violations of his constitutional rights under color of state law by the defendants, Board of Education Ball-Chatham Community District No. 5, Chatham, Illinois, each member of the board as board members and individually, William J. Hovey, individually and as Superintendent, and Michael A. Collins, individually and as Assistant Principal, Glenwood Senior High School.

Plaintiff seeks an injunction requiring defendants to continue plaintiff as a student at Chatham Senior High, expungement of the high school records and damages in the amount of $100,000 from the above-named individual defendants. The cause is here on plaintiff's motion for preliminary injunction.

The facts are not in dispute. On February 9, 1977, at approximately 3:20 in the afternoon Assistant Principal Michael A. Collins was approached by a student who said that he had seen plaintiff and a number of other students passing back and forth what the student thought to be drugs during a study hall on the morning of February 9.[1] The student further stated that plaintiff appeared to be in possession of a large amount of money. *Transcript of Expulsion Proceedings before Chatham School Board Unit District No. 5,* dated March 3, 1977 [hereinafter cited as *Transcript*] at 24–26. Classes adjourned for the day at 3:30.

The next morning at approximately 10:40 a.m. Mr. Collins and Mr. Bird, the assistant principal at the junior high school, entered the study hall class and required plaintiff and the other students reported to be involved in the previous day's activities, to accompany Mr. Collins and Mr. Bird to a nearby kitchen area. There, each boy was searched individually.

In plaintiff's case, the search was accomplished by first requesting plaintiff to empty his pockets. Plaintiff refused. Mr. Collins after stating to plaintiff that there were several alternatives, specifically, calling plaintiff's parents to either get permission for the search or request that they perform the search, or calling the police, attempted unsuccessfully to call plaintiff's parents. After the unsuccessful calls, plaintiff agreed to empty his pockets. *Transcript* at 6, 15–16. In plaintiff's possession were found a small pipe containing what appeared to be marijuana residue, a small matchbox containing what appeared to be marijuana, and a red and yellow capsule, stated to be a "Contact pill". *Transcript at 6.*

The substance in the matchbox was subsequently tested by a member of the Chatham Police Department using a field testing kit known as a Voltox kit and the substance was determined to be marijuana.

Mr. Collins, after discovery of the pipe and matchbox and after several more attempts, contacted plaintiff's parents by telephone, informed them of the situation and asked them to come to the school. Further,

---

1. At a hearing in this Court on motion for preliminary injunction Mr. Collins testified and expanded on his testimony before the school board. He testified that the student had reported that this occurred on a regular basis and that he had seen this student passing drugs on other prior occasions.

in a letter dated February 10, Mr. Collins informed plaintiff's parents that plaintiff pursuant to disciplinary procedures promulgated by the Board of Education[2] was suspended for ten days effective immediately. The letter also advised plaintiff's parents of their right to a hearing on the suspension.

Following the meeting with plaintiff's parents, Mr. Collins prepared a written report of the occurrence. This report along with a request for an expulsion hearing was presented to the defendant board at the next regular board meeting, February 21. *Transcript* at 13. The expulsion hearing was set for February 24 and notice to plaintiff's parents was given by letter dated February 22, over the signature of William D. Hovey, superintendent of the district. The expulsion hearing was subsequently re-set to March 3, at the request of plaintiff's counsel.

At the expulsion hearing on March 3, plaintiff and his parents were present and represented by counsel. Mr. Collins, Mr. Bird, plaintiff, and plaintiff's father testified. Plaintiff's counsel examined all the witnesses, presented questions to the board, and marked documents for identification. The board retired to executive session and after deliberation, ordered plaintiff expelled for the remainder of the school year for violation of the board policy concerning possession of a dangerous substance and related paraphernalia.

Under these circumstances plaintiff contends that his right to due process of law under the Fourteenth Amendment was violated by defendants. Plaintiff contends that the facts present substantive and procedural due process questions. More specifically, plaintiff alleges that his right to substantive due process was violated by an unreasonable search of his person, the fruits of which were introduced against him at the suspension hearing. Additionally, plaintiff contends that his right to due process was violated in at least three instances by the school board procedures or the lack thereof.

## I.

In the procedural due process attack on the board action, plaintiff contends that the due process clause was violated in that:

1. the expulsion hearing was conducted without the formulation of any specific procedures to govern expulsion hearings;

2. the disciplinary rules promulgated by the board were overly vague in that they failed to distinguish between conduct which would result in suspension rather than expulsion and;

3. the lack of rules promulgated by the board, to govern search of students by school officials violates fundamental fairness guaranteed by the due process clause.

■ It is clear that the due process clause is applicable to disciplinary actions taken by public school officials. *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). While,

■t is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion . . . [p]ublic high school students do have substantive and procedural rights while at school. *Wood v. Strickland,* 420 U.S. 308, 326, 95 S.Ct. 922, 1003, 43 L.Ed.2d 214 (1975).

In the *Goss* case, the Supreme Court held that a suspension of 10 days or less required at least notice and a rudimentary hearing in order to comport with due process. The Court also recognized that "[l]onger suspensions or expulsions for the remainder of the school term, or [longer] may require more formal procedures." *Goss, supra,* 419 U.S. at 584, 95 S.Ct. at 741.

■ In this case, plaintiff was expelled for violation of school rules. Clearly, more than notice and a rudimentary hearing is necessary in order to protect plaintiff's rights under the Constitution. However under the facts here presented, I believe the plaintiff received due process of law.

---

**2.** See Disciplinary Rules reproduced here as an appendix.

The procedures followed by the school board here, appear to me to be entirely proper. Although there may have been no written guidebook for the board and plaintiff's attorney to consult concerning expulsion hearings, there was an orderly presentation of evidence by the school officials and plaintiff's counsel. There was adequate notice. All parties were present. All had the opportunity to present whatever testimony they desired and to ask whatever questions they thought appropriate, in front of the assembled school board prior to a decision.

Under these circumstances, the lack of formal guidelines does not violate due process. The cases cited by plaintiff are clearly distinguishable. *Nitzberg v. Parks,* 525 F.2d 378 (4th Cir. 1975) struck down rules promulgated for prior restraint of student publications on grounds of vagueness, and is inapplicable here. The hearing here was not truncated, incomplete, or merely a rubber stamp for a prior ex parte hearing as was the case in *Strickland v. Inlow,* 519 F.2d 744 (8th Cir. 1975).

Plaintiff's next objection is that the disciplinary rules promulgated by the board are unconstitutionally vague. I find this argument without merit on the facts here presented.

█ The disciplinary rules themselves, reproduced here as an appendix, clearly provide differing punishments for differing offenses. Plaintiff contends that as to drug-related offenses, the rules are unconstitutionally vague because they do not differentiate between those offenses meriting a suspension and those offenses from which expulsion may flow. It appears to me that this is not improper or undesirable, much less a violation of due process.

"The system of public education that has evolved in the Nation relies necessarily upon the discretion and judgment of the school administrators and school board members . . ." *Wood v. Strickland, supra* 420 U.S. at 326, 95 S.Ct. at 1003. The

rules here, merely vest the school official with discretion to determine which situations he believes sufficiently serious to warrant expulsion, and the power to request such a sanction from the board. Clearly, the school officials must be vested with this type of discretion in order to maintain discipline and good order. See, *Goss, supra* 419 U.S. at 589–90, 95 S.Ct. 729 (Powell, Jr., dissenting).

█ Thirdly, plaintiff argues, citing *U. S. v. Barbera,* 514 F.2d 294 (2 Cir. 1975), that the failure to provide school administrators with guidelines for searches of students is of itself a violation of due process. But the *Barbera* case does not go this far. While, I may agree that it would be useful to provide such rules for the use of school administrators, the lack of such rules does not violate due process. As in the language quoted above from the *Wood* case suggests, the discretion of school officials must be relied upon. If the trust given those officials is violated, and if the rights of the student under the Constitution are violated, a ready forum is available in this Court. Due process does not require that school boards promulgate rules interpreting the Fourth Amendment for the use of local school officials.

## II.

The second and perhaps more difficult prong of plaintiff's due process argument is that his substantive rights under the due process clause were violated in that the entire hearing was the direct result of a search and seizure prohibited by the Fourth Amendment. The ultimate question here, of course, is whether the products of an illegal search and seizure are required to be excluded from an expulsion hearing before a local school board[3] and whether school boards are going to be required to formulate some sort of suppression hearing to determine what evidence may be presented at such a hearing.

3. In *Caldwell v. Cannady,* 340 F.Supp. 835 (N.D.Tex.1972), the court held that evidence obtained by police officers through illegal search and seizure could not be used to expel student under board policy requiring expulsion for drug-related offenses.

Reserving that question, however, I must first deal with the basic question whether the search was in fact performed in violation of the Fourth Amendment. Whether the full force of the Fourth Amendment and all the decisions interpreting it apply in this situation appears in my mind to be open to serious question.

▌ The student's right to be free from unreasonable search and seizure must be balanced with the necessity for the school officials to be able to maintain order and discipline in their schools and to fulfill their duties under the *in loco parentis* doctrine to protect the health and welfare of their students. Considering these factors the Court in *Moore v. Student Affairs Committee of Troy State Univ.*, 284 F.Supp. 725 (M.D.Ala. 1968) held that college administrators needed only "reasonable cause to believe" rather than the higher constitutional standard of probable cause, required in criminal cases, to justify a warrantless search of a student's dormitory room. In *Doe v. State*, 88 N.M. 347, 540 P.2d 827 (1975), a "reasonable suspicion" standard was used to judge the reasonableness of a search by a school official. See also, 49 A.L.R.3d 978 (1973).

Plaintiff would require this Court to hold that a school official must have probable cause to search a student, citing the learned opinion by Judge Flaum in *Picha v. Wielgos*, 410 F.Supp. 1214 (N.D.Ill.1976). But Judge Flaum properly distinguishes between instances where police are involved, requiring probable cause and those cases where the school officials are acting alone where a lesser standard is applied. See *Picha, supra,* at 1219.

▌ In this case, where there was no police involvement and where the scope of the intrusion was slight, requiring the plaintiff merely to empty his pockets, I believe the search was reasonable applying a "reasonable cause to believe" standard. The information provided by Mr. Collins' student source that something thought to be drugs and what appeared to be a large amount of money was seen in the possession of plaintiff, provided Mr. Collins reasonable cause to believe that plaintiff had drugs in his possession.

The search was reasonable and did not violate the Fourth Amendment. The Assistant Principal here was doing his job properly. He was performing his duties as all parents would wish. He was acting with restraint, for the health, safety, and welfare of all students.

Under these circumstances, the plaintiff has failed to show the necessary likelihood of success on the merits and, therefore, the motion for preliminary injunction must be denied.

## APPENDIX

### DISCIPLINARY PROCEDURES

All disciplinary procedures will be handled with immediacy. We believe this to be important to the child as well as to the atmosphere of the school. Any conference noted in these procedures will be held within three days of the infraction whether initiated by the school or parents.

SKIPPING CLASS: 1st Offense – Unexcused absence, 1 hour detention per 1 missed, notify parents by phone and letter.
2nd Offense – Unexcused absence, 1 hour detention per 1 hour missed, parental conference recommended, warn of suspension on next offense.
3rd Offense – Suspension 3 days, certified letter, parental conference recommended, warn of 10 day suspension.
4th Offense – Suspension 10 days, certified letter, parental conference required, warn of expulsion letter to Board of Education notifying them of situation.

5th Offense - Suspension till nearest board meeting (unless board chooses to set a special hearing date). Hearing before Board of Education with recommendation for expulsion.

UNEXCUSED TARDINESS:

Two warnings by teacher, referred to assistant principal in writing after 2nd offense.
3rd Offense - 3 nights detention, notify parents by letter.
4th Offense - 3 day suspension, parental conference recommended, certified letter.

DAMAGE TO SCHOOL
PROPERTY:

- payment for damaged property.

VANDALISM:

1st Offense - 3 day suspension, payment for damaged property, refer to police for arrest.
2nd Offense - expulsion*, payment for damages, refer to police for arrest.

INSUBORDINATION:
(Defined as failure to
follow a staff member's
directions)

1st Offense - 3 days detention, conference between staff member, student, parent and assistant principal, if deemed necessary by assistant principal, notify parents by phone or letter.
2nd Offense - 3 day suspension, conference between staff member, student, parent and assistant principal.
3rd Offense - 10 day suspension, removal from class for rest of semester with a failing grade.

GROSS INSUB-
ORDINATION (Defined as
talking back to a staff
member, after failing
to follow a staff
member's direction)

1st Offense - 3 day suspension, conference between staff member, student, parents and assistant principal.
2nd Offense - Removal from class for rest of semester with failing grade, 3 day suspension.
3rd Offense - Expulsion*

USE OF ABUSIVE OR OBSCENE
LANGUAGE TO A STAFF MEMBER:

1st Offense - 3 day suspension
2nd Offense - 3 to 10 days, conference between staff member, student, parents and assistant principal.
3rd Offense - Expulsion*

BEING IN PARKING LOT OR
CARS DURING THE SCHOOL
DAY:

1st Offense - 3 nights detention, warning letter to parents that on next offense student will lose driving privileges and be suspended.
2nd Offense - 3 day suspension and loss of driving privileges for rest of school term (semester).
3rd Offense - 10 day suspension and loss of driving privileges for the year.

FIGHTING ON SCHOOL
PROPERTY:

1st Offense - Choice of 3 day suspension or a legally administered corporal punishment, certified letter to parents.
2nd Offense - 10 day suspension.
3rd Offense - Recommended expulsion*

VIOLATION OF BUS RULES:

While students are on the bus, they are under the supervision of the bus driver. It is hoped <u>most</u> bus discipline problems can be handled by the bus driver. Any flagrant rule infraction that are reported by the bus driver shall be handled as a similar classroom situation. Riding the school bus is a privilege. If this privilege is abused the student will be removed from the bus. Student bus problems shall be handled by the building principal in conjunction with the Assistant Superintendent in charge of bus transportation.

SMOKING:
 High School:

If you do not smoke, you are greatly urged not to start. Those students who feel they must smoke must <u>strictly</u> follow the smoking policy, which is as follows:
   The student smoking area is the immediate area across the drive from the <u>northwest</u> corner of the corner of the building. It is the rocked area near the large tree located next to the curve in the drive. Students may smoke in this area <u>before</u> school, <u>after</u> school, or during their <u>regularly</u> assigned lunch period.

1st Offense - 3 day suspension.
2nd Offense - 3 day suspension
3rd Offense - 10 day suspension
4th Offense - Expulsion*

Junior High:

Students in 6th, 7th, and 8th grade may not at any time while on school property or while at school have in their possession cigarettes or smoke cigarettes. Any student found in violation of this rule shall be immediately suspended for 3 days. Certified letter to parents. Parental Conference.
1st Offense - 3 day suspension.
2nd Offense - 3 day suspension.
3rd Offense - 10 day suspension.
4th Offense - Expulsion*

DRUGS AND ALCOHOL:

Any student who is using drugs or alcohol outside of school and asks for assistance will be given the full services of the school's personnel and will be referred to outside social agencies if requested. Otherwise:
-Any student found in possession of, under the influence of, or in possession of paraphernalia concerning any dangerous substance shall be immediately suspended from school for 10 days. If expulsion is recommended, the board will set a hearing date at the next school board meeting to determine if this student shall be permanently expelled from school.

-Any student found in possession of, or under the influence of any alcoholic beverage shall be suspended for 5 days. If expulsion is recommended, the board will set a hearing date at the next school board meeting to determine if this student shall be permanently expelled from school.

FALSE FIRE ALARM:　　1st Offense - 3 day suspension - notify authorities.
2nd Offense - 10 day suspension - notify authorities

*Suspension till nearest board meeting (unless board chooses to set a special hearing date). Hearing before Board of Education with recommendation for expulsion.

MAC-WGB/dah

