.In Interest of L. L., Appellant, v. Circuit Court of Washington County, Respondent.

Court of Appeals

*No. 78–927.  Argued April 19, 1979.—*
*Decided May 30, 1979.*
(Also reported in 280 N.W.2d 343.)

For the appellant there was a brief and oral argument by *Charles O'Meara* of *O'Meara, O'Meara & Eckert* of West Bend.

For the respondent there was a brief by *Bronson C. La Follette,* attorney general and *Kirbie Knutson,* assist-

ant attorney general, with oral argument by *Kirbie Knutson*.

Before Voss, P.J., Brown, J., and Bode, J.

VOSS, P.J. This is an appeal from a judgment of the Juvenile Court of Washington County dated October 24, 1978, in which the juvenile L.L. was found delinquent. Disposition in the matter was adjourned on a day-to-day basis pending a decision on this appeal.

L.L. was found delinquent based on an alleged violation of the criminal law of Wisconsin, specifically, possession of marijuana contrary to sec. 161.41(3), Stats. (1975). The alleged violation was established by an admission of L.L. at a hearing on October 24, 1978.

The case was commenced by a petition filed on October 13, 1977, alleging L.L. to be delinquent because of a violation of sec. 161.41(3), Stats. (1975), possession of a controlled substance. At L.L.'s initial appearance with counsel on November 29, 1977, L.L. denied the offense alleged in the petition. A motion to suppress physical evidence was filed with the court the next day. The motion was heard on December 9, 1977, and at that time, the motion to suppress was denied.

Since it was not clear to the parties that sec. 971.31 (10), Stats. (1975), applied to juvenile proceedings, the juvenile appealed directly from the order denying the motion to suppress physical evidence. The appeal was made to the Circuit Court of Washington County, the Honorable J. Tom Merriam, presiding. The appeal was argued on May 26, 1978. On October 19, 1978, the circuit court dismissed the appeal because sec. 48.47, Stats. (1975), only provided for appeals from an adjudication of delinquency. The matter was remanded to the juvenile court for further proceedings. On remand, L.L. admitted possessing the marijuana, and a judgment of delinquency was entered on October 24, 1978. The appeal from the

judgment was taken to this court. L.L.'s motion for a three-judge panel was granted on February 7, 1979.

The facts in the case are that on September 28, 1977, L.L., the alleged juvenile delinquent, was enrolled as a student at West Bend East High School. West Bend East High School is a public high school owned and operated by the West Bend Joint School District, a municipal corporation organized and existing under the laws of Wisconsin. On September 28, 1977, Patrick Zukowski was a high school teacher under contract with the West Bend Joint School District and was assigned by the school district to teach the class which L.L. was to attend at approximately 10 a.m.

Shortly before that class, L.L. was present in a room adjoining his assigned classroom along with two or three other students assigned to the class for that time. When Zukowski entered the room for the purpose of beginning class, L.L.'s behavior appeared suspicious to him. L.L. made several clutching motions over his chest shirt pocket, although testimony conflicts as to whether the clutching was done without provocation by Zukowski or whether the clutching was done in response to Zukowski's attempt to reach inside L.L.'s shirt pocket. Zukowski suspected that L.L. had a knife or razor blade in his pocket.

The testimony is clear that L.L. clutched his pocket in order to keep Zukowski from discovering the contents of the shirt pocket. When L.L. repeatedly refused to honor Zukowski's demand, Zukowski made some statement to the effect that no official action would be taken if L.L. revealed the contents of his pocket. The trial court was unable to find that Zukowski had promised no action would be taken, but the court did find that L.L. reasonably believed no official action would be taken. In reliance upon that belief, L.L. produced a hand-rolled cigarette from the pocket. Zukowski reported the inci-

dent to the high school officials, who referred the matter to the West Bend Police Department for further proceedings.

At the commencement of the hearing, the Assistant District Attorney for Washington County stipulated that the search was not authorized by any search warrant. The court found the demand by Zukowski to produce the contents of the shirt pocket was coercive as to L.L. by virtue of Zukowski's position and that the surrender of the contents to Zukowski was involuntary. Therefore, the incident was a nonconsensual search, and L.L.'s reliance on a supposed promise to take no official action is irrelevant.

The issues presented on this appeal are: (1) whether the exclusionary rule applies to juvenile proceedings, (2) whether Zukowski was a state agent for purposes of the fourteenth amendment, and (3) whether the search of L.L.'s pocket was "unreasonable."

## EXCLUSIONARY RULE IN JUVENILE PROCEEDINGS

Section 1 of the Fourteenth Amendment to the United States Constitution provides:

Section 1. Citizens of the United States.

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges and immunities of the citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction equal protection of the laws.

The fourth amendment provides:

Amendment 4. Unreasonable searches and seizures.

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The due process language of the fourteenth amendment prohibits a state from using evidence obtained through searches and seizures which violate the standards established by the fourth amendment. *Mapp v. Ohio,* 367 U.S. 643, 654 (1961). This prohibition or "exclusionary rule" has been the principal method of ensuring that the constitutional guarantee against unreasonable searches and seizures does not become an expression without substances. *Terry v. Ohio,* 392 U.S. 1, 12 (1968).

The protections provided by the fourteenth amendment and the Bill of Rights are not limited to adult citizens. *In re Gault,* 387 U.S. 1, 13 (1967). The court in *Gault* recognized that juvenile delinquency proceedings are not subject to all of the formal requirements of an adult criminal prosecution but only need to provide the basic elements of due process. The rule excluding the use of illegally obtained evidence is one of the basic elements of due process. A juvenile delinquency proceeding is a court proceeding brought by the state which can result in the deprivation of the minor's liberty. Due process does not allow such deprivations to be obtained on the basis of illegally obtained evidence.[1] Thus, it is clear that the exclusionary rule applies. The remaining issues

---

[1] In *State v. Young,* 234 Ga. 488, 216 S.E.2d 586 (1975), the Georgia Supreme Court classified searches into three categories for purposes of the fourth amendment: (1) wholly private searches to which the amendment does not apply, (2) state action not in-

address whether the marijuana taken from L.L. was obtained illegally.

## STATE AGENT

It is a long established rule that the constitutional guarantee against unlawful searches and seizures applies only to actions of government agents and not individuals. *Burdeau v. McDowell*, 256 U.S. 465, 475 (1921). The State argues that Zukowski should not be regarded as a government agent because his primary responsibility is the education of the children assigned to his class. A necessary adjunct to this responsibility, however, is the maintenance of order and discipline in the school. The state legislature has given the local school board the authority to "[m]ake rules for the . . . government of the schools of the district, including rules pertaining to conduct and dress of pupils in order to maintain good decorum and favorable academic atmosphere . . . ." Sec. 120.13(1), Stats. Teachers are hired by the school board to carry out all of those responsibilities. When a

volving law enforcement agents protected by the amendment but not the exclusionary rule, and (3) searches by law enforcement agents to which both the amendment and the exclusionary rule apply. Searches by teachers would fall within the second category and so would not be subject to the exclusionary rule. This classification does not adequately account, however, for evidence seized by a teacher and turned over to law enforcement agents. Once the evidence comes into the possession of law enforcement officers and is used in court proceedings against the liberty interests of the person searched, the exclusionary rule must be available to deter prosecutions based on unlawful searches. Without such exclusions, school personnel and other government employees would become the same sort of bypass around the amendment's protections that the Court meant to close by extending the exclusionary rule to state court proceedings in *Mapp v. Ohio, supra.*

teacher conducts a search to maintain school discipline, he acts on behalf of the school board.

The United States Supreme Court has stated:

The Fourteenth Amendment, as now applied to the States, protects the citizen against the State itself and all of its creatures—Boards of Education not excepted. These have, of course, important, delicate, and highly discretionary functions, but none that they may not perform within the limits of the Bill of Rights. *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 637 (1943).

In *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 511 (1969), the court added:

In our system, state-operated schools may not be enclaves of totalitarianism. School officials do not possess absolute authority over their students. Students in school, as well as out of school are "persons" under our Constitution. They are possessed of fundamental rights which the State must respect, just as they themselves must respect their obligations to the State.

The fourteenth amendment has been consistently applied to school regulations in many different contexts. *See, e.g., Ferrell v. Dallas Independent School District,* 392 F.2d 697 (5th Cir. 1968) (male hair length regulations) ; *Burnside v. Byars,* 363 F.2d 744 (5th Cir. 1966) (wearing of "freedom buttons").

More specifically, courts in other jurisdictions have held that searches of students by school officials constitute state action for purposes of the fourteenth amendment. *E.g., Bellnier v. Lund,* 438 F. Supp. 47 (N.D.N.Y. 1977) ; *M. v. Board of Education Ball-Chatham Community Unit School District No. 5,* 429 F. Supp. 288 (S.D. Ill. 1977) ; *State v. Baccino,* 282 A.2d 869, 49 A.L.R.3d 793 (Del. Super. Ct. 1971) ; *State v. Young, supra* note 1; *State v. Mora,* 307 So.2d 317 (La.) *vacated on other*

*grounds* 423 U.S. 809 (1975); *In re State in the Interest of G.C.*, 121 N.J. Super. 108, 296 A.2d 102 (1972); *In re Doe v. State*, 88 N.M. 347, 540 P.2d 827 (Ct. App. 1975); *People v. D.*, 34 N.Y.2d 483, 358 N.Y.S.2d 403, 315 N.E. 2d 466 (1974); *People v. Jackson*, 65 Misc.2d 909, 319 N.Y.S.2d 731 (1971), *affd. mem.*, 30 N.Y.2d 734, 333 N.Y.S.2d 167, 284 N.E.2d 153 (1972); *State v. McKinnon*, 88 Wash.2d 75, 558 P.2d 781 (1977). *But see In re Donaldson*, 269 Cal. App.2d 509, 75 Cal. Rptr. 220 (1969); *Mercer v. State*, 450 S.W.2d 715 (Tex. Civ. App. 1970). We conclude that, at least where a teacher's search results in the institution of juvenile delinquency proceedings, there has been state action within the fourteenth amendment. Therefore, the due process prohibition against unreasonable searches and seizures applied to Zukowski's seizure of marijuana from L.L.

## REASONABLENESS OF SEARCH

It must be remembered that "what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." *Elkins v. United States*, 364 U.S. 206, 222 (1960). "[T]here can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails." *Camara v. Municipal Court*, 387 U.S. 523, 536–37 (1967).

Varying balances have been struck in different situations. When law enforcement officers search a person on his property, they must first obtain a warrant upon a showing of probable cause unless the situation falls within one of the few specifically established and jealously drawn exceptions. *E.g., Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971). Substantially less proof is required to obtain a warrant for area-wide health inspections. *Camara v. Muncipal Court*, 387 U.S. at 538. No

warrant is required when a police officer observes facts which give rise to a reasonable belief that a "frisk" of a suspicious person is necessary to ensure the officer's safety. *Terry v. Ohio,* 392 U.S. at 27. Routine stops at permanent border checkpoints and selective questioning of motorists sent to secondary checkpoints requires neither a warrant nor a showing of probable cause. *United States v. Martinez-Fuerte,* 428 U.S. 543, 561–63 (1976). However, random stops of motor vehicles are unreasonable in the absence of an articulable and reasonable suspicion that the motorist is unlicensed, that the vehicle is not registered or that the vehicle or occupant is otherwise subject to seizure for violation of law. *Delaware v. Prouse,* 47 U.S.L.W. 4323, 4327, (1979).

In this case, L.L. has a constitutional interest in freedom from government intrusion into his privacy. The state has an interest in educating children, and to do so, it is necessary to maintain order in and around the classroom. The state's authority to supervise children during school hours is generally described as its position *in loco parentis.* The teacher's role in this matter was succinctly described over a century ago as follows:

While the principal or teacher in charge of a public school is subordinate to the school board or board of education of his district or city, and must enforce rules and regulations adopted by the board for the government of the school, and execute all its lawful orders in that behalf, he does not derive all his power and authority in the school and over his pupils from the affirmative action of the board. He stands for the time being *in loco parentis* to his pupils, and because of that relation he must necessarily exercise authority over them in many things concerning which the board may have remained silent. In the school, as in the family, there exist on the part of the pupils the obligations of obedience to lawful commands, subordinaation, civil deportment, respect for the rights of other pupils and fidelity to duty. These

obligations are inherent in any proper school system, and constitute, so to speak, the common law of the school. Every pupil is presumed to know this law, and is subject to it, whether it has or has not been reenacted by the district board in the form of written rules and regulations. Indeed it would seem impossible to frame rules which would cover all cases of insubordination and all acts of vicious tendency which the teacher is liable to encounter daily and hourly. *State ex rel. Burpee v. Burton,* 45 Wis. 150, 155 (1878), quoted with approval in *State ex rel. Dresser v. District Board,* 135 Wis. 619, 626, 116 N.W. 232, 235 (1908).

*See also* 38 Op. Att'y Gen. 82, 85 (1949).

There are four possible approaches to the application of the fourth amendment and the exclusionary rule to searches of students while in school: (1) the fourth amendment does not apply because the school official stands in the position of a parent, (2) the fourth amendment applies but the exclusionary rules does not, (3) the fourth amendment applies but the doctrine of *in loco parentis* lowers the standard applied in determining reasonableness, and (4) the fourth amendment applies and probable cause is required. *Bellnier v. Lund,* 438 F. Supp. at 52. We have already rejected the first two positions, and the fourth position has been embraced by only one jurisdiction. *State v. Mora,* 307 So.2d at 320. We agree with those courts which have found the third position to be the most appropriate.

Some courts in considering this issue have referred to the teacher's position *in loco parentis* and concluded that this control is such that searches need only be precipitated by a "reasonable suspicion" that some violation of school discipline had occurred. *See State v. Baccino, supra; In re State in the Interest of G.C., supra; People v. Jackson, supra.*[2] In *M. v. Board of Education Ball-*

---

[2] The Georgia Supreme Court described the applicable standard as only "the most minimal restraints necessary to insure that stu-

*Chatham Community Unit School District No. 5, supra,*
the principal asked a student to empty his pockets after
another student had indicated that M. had drugs in his
possession. The district court concluded that the search
was reasonable because the principal had reasonable
grounds to believe that M. had drugs in his possession.
Other courts have attempted to give more specific
descriptions of the justification for the application of a
lower standard.

In *People v. D., supra,* the New York Court of Appeals
noted that teachers, like parents, are responsible for the
education, discipline and security of their students but
do not possess all parental prerogatives. At the same
time, a school is a special place in which serious and
dangerous wrongdoing cannot be tolerated. Minor stu-
dents, for the protection of themselves and their peers,
need not be treated with the same circumspection re-
quired outside the school or for adults, but they must
not be subjected to random causeless searches. Accord-
ingly, the court concluded that the basis for finding
sufficient cause for a school search will be less than that
required outside of the school. In that case, however,
the court found the "suspicious" behavior of the juvenile
—twice entering the lavatory with a fellow student but
remaining for only five to ten seconds and later having
lunch with another student suspected of dealing with
drugs—was insufficient to justify the search.

The New Mexico appeals court discussed the realities
of the school situation which call for immediate action
in the face of increasing incidents of serious crime with-
in the schools. Noting that engrafting the warrant re-

dents are not whimsically stripped of their personal privacy and
subjected to petty tyranny." *State v. Young,* 234 Ga. at 496, 216
S.E.2d at 593. When stated in this manner, the standard would
seem to allow searches which are not even clearly related to the
proper maintenance of school discipline. Accordingly, we cannot
agree with this formulation.

quirement onto school searches would necessitate police assistance for even trivial searches for items such as chewing gum, a less stringent procedure was deemed appropriate. Thus, the court adopted "the standard that school officials may conduct a search of the student's person if they have a reasonable suspicion that a crime is being or has been committed or they have reasonable cause to believe that the search is necessary in the aid of maintaining school discipline." *Doe v. State,* 88 N.M. at 352, 540 P.2d at 832.

In a case involving prosecutions for possession of controlled substances seized in a search by the principal following a call by the police, the Washington Supreme Court sitting *en banc* concluded:

Maintaining discipline in schools oftentimes requires immediate action and cannot await the procurement of a search warrant based on probable cause. We hold that the search of a student's person is reasonable and does not violate his Fourth Amendment rights, if the school official has reasonable grounds to believe the search is necessary in the aid of maintaining school discipline and order. *State v. McKinnon,* 88 Wash.2d at 81, 558 P.2d at 784.[3]

None of these decisions, however, fully explain the reasons for allowing an invasion of a student's privacy upon less than probable cause. The court in *Terry v. Ohio,* 392 U.S. at 27, allowed limited searches by police officers upon a reasonable belief that their safety was threatened. The court balanced the state's great interest in the safety of law enforcement officers and bystanders

---

[3] The dissent in *McKinnon* argued cogently that the facts presented did not present the normal situation of school discipline but in fact represented action by the principal as an agent of the police. The search occurred within seven minutes of a phone call from the police describing the students and the pocket in which each was carrying drugs. We are not faced with such cooperation in this case and express no opinion on how we would view such a case.

against the intrusion upon the citizen's interest in privacy. Even though the citizen could reasonably expect personal privacy, the limited intrusion of a "frisk" for weapons was deemed to be the least intrusive way to protect the state's overriding interest.

A similar analysis of the interests involved here leads us to conclude that a lower standard is sufficient to satisfy the fourth amendment requirement of reasonableness. First, the citizens of Wisconsin have placed a high value on the education of minors.[4] The responsibility for providing this education has been given to the state. Wis. Const. art X. Education requires an orderly atmosphere which is free from danger and disruption. The introduction of dangerous or illegal items or substances into the school presents a hazard for teachers and students.[5] A teacher cannot perform his educational function when he or his students feel threatened or when illegal substances distract the students.

Second, when a child enters the school he is required to attend, there is not the same reasonable expectation of privacy that he would have in other situations. Even though the school officials are state agents, their position *in loco parentis,* in the eyes of the minor student, puts them in a position of authority similar to a parent. In a school, each student's security depends upon a certain amount of restraint upon the activities of the students. Whether for security or disciplinary purposes, this restraint is assumed and expected by all students. Faced with such authority in a setting requiring control of his behavior, the child cannot reasonably expect to

[4] Since the case before us involves a juvenile, we do not address searches of adult students.

[5] Although the New Mexico Court raised the specter of searches for chewing gum, we see no need to consider such situations. This case involves a seizure of marijuana discovered in a search for a suspected knife or razor blade. It is extremely unlikely that a teacher's search for an innocuous item would ever present an item in the courts of this state.

have the same amount of privacy as he would outside of the school.

Finally, the realities of the classroom present few less intrusive alternatives to an immediate search for suspected dangerous or illegal items or substances. The safety of other students requires the prompt removal of dangerous items. The possession of certain items has been declared illegal because of the danger presented to the possessor and those around him. For example, it is illegal for anyone to possess marijuana and for minors to possess alcohol. Because of the possibility of destruction or distribution of illegal items and substances, there will rarely be time to contact police and obtain a warrant once the school official has a reasonable basis to believe that a student has an illegal item or substance.

A balancing of these interests shows that a limited search for dangerous or illegal items or substances is a proper means of protecting the interests of education without unreasonably interfering with the student's privacy interest. Accordingly, we hold that a warrantless search by a teacher or school official is reasonable if it is based upon a reasonable suspicion that a student has a dangerous or illegal item or substance in his possession. This does not mean teachers may simply search their students when they suspect criminal conduct and there is adequate time to contact the police and obtain a warrant. In such cases, a significant reason for the lower standard does not exist, and a warrant should be obtained. In cases where the lower standard applies, there must still be an articulable basis for the search. That basis must be related to removal of a dangerous or illegal item or substance and derived from reliable information or personal observations indicating that a student is in violation of school safety rules or the law.

The New York, New Mexico and Washington courts listed four factors to be used in determining whether

reasonable grounds existed: (1) the child's age, history and school record, (2) the prevalence and seriousness of the problem in the school to which the search was directed, (3) the exigency requiring the search without delay, and (4) the probative value and reliability of the information used as a justification for the search. We feel that an additional factor, related to the child's history and school record, is the teacher's prior experience with his student. Because of his training and repeated contacts with the student, the teacher can use previous incidents and behavior as part of a reasonable basis to believe that an immediate search is necessary.

In light of these criteria, the last issue is whether there was a reasonable basis to believe that the immediate search of L.L.'s pocket was necessary to remove a suspected dangerous or illegal item or substance. The trial court found that Zukowski had a reasonable suspicion that L.L. had some item which did not belong in the school. The reasonableness of a search is a substantive determination made by the trial court from the facts and circumstances in light of the fundamental criteria laid down by the fourth amendment. Findings of reasonableness are respected on appeal unless inconsistent with constitutional guarantees or contrary to the great weight and clear preponderance of the evidence. *Ker v. California,* 374 U.S. 23, 33–34 (1963); *State v. Meier,* 60 Wis.2d 452, 456, 210 N.W.2d 685, 687 (1973); *see State v. Bagnall,* 61 Wis.2d 297, 310, 212 N.W.2d 122, 129 (1973).

L.L. was a high school student enrolled in the school's Emotional Development Program. The program has a small number of students and is operated in a three-room complex adjacent to the high school. Zukowski had taken razor blades and a knife away from L.L. on previous occasions. Zukowski testified that the behavior of L.L. and his classmates led him to believe that L.L. might have something of a similar nature again. The suspicious

behavior consisted of an unusual quietness by L.L., the other students "eyeing" L.L., L.L. turning away from Zukowski as L.L. tried to walk past him, and L.L. clutching his pocket.

While not sufficient when viewed separately, these observations taken collectively, along with Zukowski's knowledge of the typical behavior of his students, are sufficient to lead us to the conclusion that the trial court did not err in finding that Zukowski had a reasonable belief that an immediate search was necessary. L.L. had previously brought dangerous items to school. These items had been a potential danger for everyone present, including L.L., and thereby posed a problem for those associated with the program. The potential danger of another knife or razor blade required immediate action. Finally, the belief that a knife or razor blade was involved was formed on the basis of firsthand observation and previous experience with L.L.'s behavior. Therefore, Zukowski's search of L.L.'s pocket for a possible knife or razor blade was reasonable. The subsequent discovery of a marijuana cigarette does not affect the reasonableness of the search.

Accordingly, the juvenile court was not in error in denying L.L.'s motion to suppress the evidence.

*By the Court.*—Judgment affirmed.