[No. 49873–3.   En Banc.   January 11, 1985.]

DANIEL R. KUEHN, ET AL, *Appellants,* v. RENTON SCHOOL DISTRICT NO. 403, ET AL, *Respondents.*

*Harvey Grad* and *Michael W. Gendler* of *American Civil Liberties Union,* for appellants.

*Montgomery, Purdue, Blankinship & Austin,* by *George W. Akers* and *Peggy C. Hughes,* for respondents.

WILLIAMS, C.J.—The validity of searches of schoolchildren by school officials is judged by the reasonable belief standard. The reasonable belief standard requires that there be a reasonable belief on the part of the searching school official that the individual student searched possesses a prohibited item. When school officials search large groups of students solely for the purpose of deterring disruptive conduct and without any suspicion of each individual searched, the search does not meet the reasonable belief standard. Because the search at issue here was conducted without individualized suspicion the student's rights under the Fourth Amendment were violated. We therefore reverse the trial court's determination of this issue.

Hazen High School, operated by Renton School District 403, offered, as an accredited, graded course, the Hazen

High School Wind Ensemble. In addition to required class participation, the Ensemble each year visited different locations to perform concerts. The concert trips were not mandatory; and if students could not afford to participate, their grades were unaffected. Participation required signed parent permission slips.

Adam Kuehn was a member of the Ensemble. In 1982, his senior year at Hazen High School, the Ensemble planned a concert trip to Vancouver, B.C. As a condition of participation, each student going on the trip was to be subjected to a predeparture luggage search by parent chaperons. The decision to search was inspired by an incident 2 years earlier on the Ensemble's trip to Astoria, Oregon, when two students were caught with liquor in their hotel rooms. The search requirement was implemented for the 1981 Ensemble trip, and again for the 1982 trip. The school's music director, the student band council, the parent booster club, and the school administration were united in support of the policy.

Adam Kuehn objected to the 1982 luggage search as did his parents. Despite negotiations, the school refused to abandon the policy or to exempt Adam. The school principal issued a letter stating that the luggage check was a condition of participation, and that students had the option of not participating. The Kuehns sought a temporary restraining order just prior to departure, but the order was denied. Adam arrived at the luggage check with his suitcase locked and a note from his mother stating that she had inspected his luggage, that it contained nothing illegal, and that Adam wanted no one but customs officials to search his luggage. Adam was prohibited from going on the trip.

The plaintiffs then filed an amended complaint alleging a violation of rights under 42 U.S.C. § 1983. Specifically, they contend that the search violated the fourth amendment to the United States Constitution and article 1, section 7 of the Washington State Constitution. They further allege

emotional damages. The trial court found that the plaintiffs' case was moot and not of public interest or constitutional significance. Nonetheless, the court held that the search was reasonable, and that Adam had only a minimal expectation of privacy because the luggage might have been searched at the border and there was advance notice. Direct review was granted by this court pursuant to RAP 4.2. We reverse.

I

The District argues and the trial court held the 42 U.S.C. § 1983 action moot since Adam never submitted to the search, declaratory relief was impossible to grant, and there was no showing at trial that the search would be repeated. We disagree.

■ "A case is moot if a court can no longer provide effective relief", *In re Cross,* 99 Wn.2d 373, 376–77, 662 P.2d 828 (1983), and the issues it presents are "purely academic". *State v. Turner,* 98 Wn.2d 731, 733, 658 P.2d 658 (1983). Although declaratory relief may be impossible to grant due to an intervening occurrence, the existence of a monetary dispute arising out of a declaratory action will prevent the action from becoming moot. *McGary v. Westlake Investors,* 99 Wn.2d 280, 284, 661 P.2d 971 (1983).

While plaintiffs cannot be granted the declaratory relief they sought 2 years ago to enjoin the allegedly unconstitutional search requirement, nevertheless, since 42 U.S.C. § 1983 provides nominal damages and attorney fees for civil rights violations, this issue remains to be resolved between these parties. The District is incorrect in arguing plaintiffs must demonstrate actual injuries. In a 42 U.S.C. § 1983 action they need only establish a violation of their constitutional rights. *Carey v. Piphus,* 435 U.S. 247, 266–67, 55 L. Ed. 2d 252, 98 S. Ct. 1042 (1978). Furthermore, we find the unusual constitutional issues presented by this case to be of continuing and substantial public interest. *Alderwood Assocs. v. Washington Envtl. Coun.,* 96 Wn.2d 230, 233, 635 P.2d 108 (1981).

## II

This action arises under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity . . .

Plaintiffs must show both a deprivation of a federal right and that the offending action was "under color of law." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970).

## A

The Fourth Amendment prohibits unreasonable searches. When law enforcement officials search, probable cause "is the standard by which a particular decision to search is tested against the constitutional mandate of reasonableness." *Camara v. Municipal Court,* 387 U.S. 523, 534, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967).

■ The reasonable belief standard was adopted to permit searches of students by school officials on a lower quantum of evidence than that required for a search by law enforcement officers. *State v. McKinnon,* 88 Wn.2d 75, 558 P.2d 781 (1977); 2 W. LaFave, *Search and Seizure* § 10.11(b), at 456 (1978). In *McKinnon* we recognized that the need for immediate action on the part of the school official may preclude the procurement of a search warrant based upon probable cause. We did not authorize purely disciplinary searches, but rather set forth standards to be used in the determination of reasonableness: "[T]he child's age, history, and school record, the prevalence and seriousness of the problem in the school to which the search was directed, the exigency to make the search without delay, and the probative value and reliability of the information used as a justification for the search." (Citations omitted.) *McKinnon,* at 81. Not one of these standards is met here.

To meet the reasonable belief standard, it was necessary for the school officials to have some basis for believing that drugs or alcohol would be found in the luggage of each individual student searched.[1] These school officials did not believe they would find anything.

In any sufficiently large group, there is a statistical probability that someone will have contraband in his possession. The Fourth Amendment demands more than a generalized probability; it requires that the suspicion be particularized with respect to each individual searched. *Ybarra v. Illinois,* 444 U.S. 85, 91, 62 L. Ed. 2d 238, 100 S. Ct. 338 (1979); *Horton v. Goose Creek Indep. Sch. Dist.,* 690 F.2d 470 (5th Cir. 1982) (requiring individualized suspicion under reasonable belief standard in searches by school officials), *cert. denied,* 463 U.S. 1207, 77 L. Ed. 2d 1387, 103 S. Ct. 3556 (1983); *Bellnier v. Lund,* 438 F. Supp. 47 (N.D.N.Y. 1977) (search invalid where no reasonable suspicion that each student searched possessed contraband). The factors prescribed in *McKinnon* evidence the requirement of individualized suspicion. In the absence of individualized suspicion of wrongdoing, the search is a general search. "[W]e never authorize general, exploratory searches." *State v. Helmka,* 86 Wn.2d 91, 93, 542 P.2d 115 (1975).

There was no basis whatsoever to believe that Adam

---

[1]In the cases where the reasonable belief standard was held applicable, the searching school official had some basis for suspecting a particular student of misconduct prior to initiating the search. *See, e.g., State v. Baccino,* 282 A.2d 869 (Del. Super. Ct. 1971); *State v. D.T.W.,* 425 So. 2d 1383 (Fla. Dist. Ct. App. 1983); *State v. Young,* 234 Ga. 488, 216 S.E.2d 586, *cert. denied,* 423 U.S. 1039, 46 L. Ed. 2d 413, 96 S. Ct. 576 (1975); *Picha v. Wielgos,* 410 F. Supp. 1214 (N.D. Ill. 1976); *M. v. Board of Educ.,* 429 F. Supp. 288 (S.D. Ill. 1977); *Doe v. Renfrow,* 475 F. Supp. 1012 (N.D. Ind. 1979), *aff'd in part,* 631 F.2d 91 (7th Cir. 1980), *cert. denied,* 451 U.S. 1022, 69 L. Ed. 2d 395, 101 S. Ct. 3015 (1981); *Stern v. New Haven Comm'ty Schs.,* 529 F. Supp. 31 (E.D. Mich. 1981); *State ex rel. T.L.O.,* 94 N.J. 331, 463 A.2d 934, *cert. granted,* 464 U.S. 991 (1983); *M.M. v. Anker,* 477 F. Supp. 837 (E.D.N.Y.), *aff'd,* 607 F.2d 588 (2d Cir. 1979); *Tarter v. Raybuck,* 556 F. Supp. 625 (N.D. Ohio 1983), *aff'd in part,* 742 F.2d 977 (6th Cir. 1984); *R.C.M. v. State,* 660 S.W.2d 552 (Tex. Ct. App. 1983); *Jones v. Latexo Indep. Sch. Dist.,* 499 F. Supp. 223 (E.D. Tex. 1980); *Collier v. Miller,* 414 F. Supp. 1357 (S.D. Tex. 1976); *L.L. v. Circuit Court,* 90 Wis. 2d 585, 280 N.W.2d 343 (Ct. App. 1979).

Kuehn or any of the students had prohibited items in their luggage. The reasonable belief standard was not met.

It makes no difference whether the search was conducted by the band director, the principal, or the parents. When a private person is acting under the authority of the State, Fourth Amendment protections apply. *United States v. Walther,* 652 F.2d 788 (9th Cir. 1981); *see Coolidge v. New Hampshire,* 403 U.S. 443, 487, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). It is clear that the parents conducted the search with the sanction and enforcement authority of the school officials.

Contrary to the trial court's view, neither the voluntary nature of the activity nor the preannouncement of the search, standing alone, make the search constitutional. We unequivocally disapproved of the general search of rock concert patrons whose attendance was certainly voluntary. *Jacobsen v. Seattle,* 98 Wn.2d 668, 658 P.2d 653 (1983). Participation in the Wind Ensemble trip, while voluntary, was not a private outing. Instead, it was an authorized school activity, in which Ensemble members were expected to participate unless they could not financially afford to do so. Further, the mere announcement that a constitutional right must be waived in order to participate in the school activity cannot make the search reasonable. In another case where preannouncement of a search of students' lockers was the offered justification, the court countered: "[I]f the Government announced that all telephone lines would henceforth be tapped, . . . the public would not lose its expectation of privacy in using the telephone." *Jones v. Latexo Indep. Sch. Dist.,* 499 F. Supp. 223, 234 (E.D. Tex. 1980).

We are neither unmindful nor unsympathetic to the great responsibility borne by the band director and parent chaperons in supervising a large group of high school students on a trip to a foreign country. Nonetheless, an important consideration in the weighing of public needs against individual rights is the availability of less burdensome alternatives to the intrusion. *Jacobsen,* at 674. For

example, the school might have required the parents of each student to examine their own child's luggage, and to vouch for the contents as Kathryn Kuehn did. The school might have impressed upon the students the consequences of a border search when contraband is found. Stern disciplinary measures might have been announced by the school authorities, with a signed acknowledgment required from each participant and his or her parents.

The defendants suggest that a search by parents is somehow less intrusive and more delicate than a search by border guards. This thinking is faulty in several respects: The possibility of a search at the border is remote. A search by an anonymous stranger acting in an official capacity may be far less embarrassing to a student carrying something of a private nature than would be one conducted by the parent of a classmate. A border guard searches pursuant to legal authority. The school's pre–trip search does not make the probability of a subsequent search at the border more or less likely. Finally, a deprivation of a constitutional right cannot be justified by a citizen's not retaining the same right in a foreign country; otherwise all potential travelers could be stripped of their rights in advance of departure.

In *Jacobsen,* we observed that most of the persons subjected to the rock concert unconstitutional patdown were juveniles and young adults. We stated: "[T]he damage to the understanding of constitutional guaranties of freedom from unreasonable searches on the part of these young persons is incalculable." *Jacobsen,* at 674. The students on the band trip were subjected to unreasonable searches at the direction of school officials entrusted with teaching civic responsibilities and rights. "That [the schools] are educating the young for citizenship is reason for scrupulous protection of Constitutional freedoms of the individual, if we are not to strangle the free mind at its source and teach youth to discount important principles of our government as mere platitudes." *West Va. State Bd. of Educ. v. Barnette,* 319 U.S. 624, 637, 87 L. Ed. 1628, 63 S. Ct. 1178, 147 A.L.R. 674 (1943). The general search is anathema to

Fourth Amendment and Const. art. 1, § 7 protections, and except for the most compelling situations, should not be countenanced.

## B

■ A second determination required in a 42 U.S.C. § 1983 action is whether the action was under "color of law." "'Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken "under color of" state law.'" *Monroe v. Pape*, 365 U.S. 167, 184, 5 L. Ed. 2d 492, 81 S. Ct. 473 (1961) (citing *United States v. Classic*, 313 U.S. 299, 85 L. Ed. 1368, 61 S. Ct. 1031 (1941)), *overruled on other grounds in Monell v. Department of Social Servs.*, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978).

That all defendants here were clothed with authority of state law is apparent. Our statutes provide the principal and teacher with the authority to establish rules of conduct and discipline, oblige student compliance, and authorize parent participation. *See, e.g.*, RCW 28A.58.200, RCW 28A.58.201, and RCW 28A.58.1011(3). "It is enough that [a private person] is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions." (Citations omitted.) *Dennis v. Sparks*, 449 U.S. 24, 27–28, 66 L. Ed. 2d 185, 101 S. Ct. 183 (1980). Thus, the school principal, the band director, and the parent booster club members were clothed with the authority of state law when they announced their policy of requiring students' submission of luggage for search prior to departure.

## CONCLUSION

The school officials, subject to Fourth Amendment restrictions, did not comply with the reasonable belief standard when they mandated submission to an across–the–board search of each student's luggage as a condition to participation in a school activity. The actions of the school officials were carried out under color of law. We reverse the

trial court and remand for further proceedings not inconsistent with this opinion.

BRACHTENBACH, DORE, and PEARSON, JJ., concur.

UTTER, J. (concurring)—I concur with the majority opinion's reasoning and its conclusion that the general preventive, disciplinary search of student luggage prior to the school band trip violated the students' Fourth Amendment rights. School and parent chaperons, however, are not powerless to protect against contraband on a trip while still respecting the constitutional rights of the students.

To avoid the constraints imposed by the Fourth Amendment, a search must be private, not one initiated by or enforced by the school or those acting as its agents. The school, in this case, could have asked parents or guardians to verify in writing that their child's luggage contained no contraband. Had the search initiated with the parent chaperons rather than with the band class, school–related booster club and band leader, had it been enforced by parents rather than the school, and had the trip not been a school sponsored trip, announced in the school bulletin and supervised by a school agent, the search by the chaperons would have been a private search. However, under the circumstances of the present case, the Fourth Amendment must apply since the search was not private.

PEARSON, J., concurs with UTTER, J.

DOLLIVER, J. (dissenting)—The majority holds the "reasonable belief" test, as set forth in State v. McKinnon, 88 Wn.2d 75, 558 P.2d 781 (1977), applies to the unusual facts of this case. While no search in our society is to be taken lightly, I disagree with the characterization of the events in this case as a violation of the Fourth Amendment and Const. art. 1, § 7. Accordingly, I dissent.

I

The majority asserts the defendants were "clothed with

the authority of state law". Majority opinion, at 602. It rests this position on the fact that the luggage check was a condition precedent to participation on a class trip which schools were authorized by statute to conduct. Ignored, however, is the fact the idea of a predeparture luggage check evolved from the booster club which was composed only of parents and students and that it was proposed by the students' and parents' idea to prevent drinking and drug possession on class trips—class trips which the school was not required to sponsor. The majority, moreover, has not considered the following facts: there had been, and common sense suggests, certainly to an attentive parent if not to this court, there might again be, cases of liquor possession and use; the students' attendance on the trips was not required; the students paid their own way. While it is true the principal issued letters stating to parents that their children must submit to the luggage check, this fact alone surely is not dispositive of the issue. The letter in substance is simply a formal expression of the private views of the parents and the students who conceived of and almost unanimously approved of the luggage check.

The majority characterizes the luggage check as "joint action" between state officials and private persons. Majority opinion, at 602 (citing *Dennis v. Sparks,* 449 U.S. 24, 27–28, 66 L. Ed. 2d 185, 101 S. Ct. 183 (1980)). The present case, however, unlike *Dennis,* was not a "conspiracy" to deprive anyone of constitutional rights. On the contrary, the search was conceived and executed by parents and their children to further the safety of children who were participating in a voluntary class trip to a foreign country. The fact that the school had the authority to, and did in fact, organize and participate in the trip does not transform the "private" nature of the search into a full blown school search case.

The relevant inquiry here is *whose* interest is being furthered by the search: the State's or the parents'? *People v. Zelinski,* 24 Cal. 3d 357, 367, 594 P.2d 1000, 155 Cal. Rptr. 575 (1979) (statute enabling private store detectives to

make criminal arrests is state action since it furthers the public interest in enforcing the criminal laws; no state action in private search for store security only). The reality of this case is that the parents' interest was being primarily furthered by the search. Any benefit to the school, which was not required to sponsor these trips, was incidental. I disagree with the majority's conclusion that there was state action in this search.

## II

Even if it is conceded, arguendo, that there was state action in this search, I disagree with the majority's conclusion that the Fourth Amendment governs. Analysis of the unique facts of this case suggests that the search was a "private search" to which the Fourth Amendment does not apply.

Searches in the school context have historically been justified by the doctrine of in loco parentis. That doctrine is based on the premise that a school official stands in the place of a parent when the student is in the school's custody. 1 W. Blackstone, *Commentaries* *453; Mawdsley, *In Loco Parentis: A Balance of Interests*, 61 Ill. B.J. 638 (1973). Strictly applying in loco parentis several courts have held that searches made pursuant to the teacher–student relationship are "private searches". Two recent cases, both criminal, demonstrate the point. *Mercer v. State*, 450 S.W.2d 715 (Tex. Civ. App. 1970); *D.R.C. v. State*, 646 P.2d 252 (Alaska Ct. App. 1982). These cases are "empty the pockets" cases in which a school official suspected a student possessed contraband. The rationale of these cases is that, where police are not involved, the search was private based on the school officials' "parental" duty to maintain discipline in the schools. The inquiry is in what *capacity* the school officials were acting at the time of the search: were they acting as law enforcement officers or as in loco parentis (substitute) parents? *Accord, State v. Gonzales*, 24 Wn. App. 437, 604 P.2d 168 (1979) (search by private security officer not subject to Fourth Amendment); *United States v. Coles*, 302 F. Supp. 99 (D. Me. 1969) (search by adminis-

trative officer in federal job corps center not subject to Fourth Amendment); *State v. Keadle,* 51 N.C. App. 660, 277 S.E.2d 456 (1981) (search by state paid dormitory resident adviser not subject to Fourth Amendment); *State v. Kappes,* 26 Ariz. App. 567, 550 P.2d 121 (1976) (same).

While judicial application of the in loco parentis doctrine as a means of avoiding the Fourth Amendment in criminal school search cases has been questioned, *e.g.,* Buss, *The Fourth Amendment and Searches of Students in Public Schools,* 59 Iowa L. Rev. 739, 765–68 (1974), I find the doctrine quite relevant in the present case. Unlike the case of a criminal investigation by school officials where there is a question as to whether the officials are acting in the best interests of the students, the school and parents in the present case were in fact charged with onerous parental-like responsibilities. The search, moreover, was not motivated by nor did it in any way resemble the seizure of criminal evidence. *See* Case Comment, *Search and Seizure—School Officials' Authority To Search Students Is Augmented by the In Loco Parentis Doctrine—Nelson v. State, 319 So. 2d 154 (Fla. 2d Dist. Ct. App. 1975),* 5 Fla. St. U. L. Rev. 526, 530–31 (1977). The parents were not acting in the capacity of "government agents" searching luggage for contraband; any contraband found was not to be turned over to the police and prosecutors. No criminal sanctions were contemplated. On the contrary, the parents were merely furthering a purely disciplinary function by ensuring that no alcohol was present on the class trip. Thus, I would distinguish such cases as *State v. McKinnon, supra,* to which the Fourth Amendment applies, as cases in which school officials are acting in a law enforcement capacity at the time said official authorized and/or conducted the search.

The majority, without analysis, asserts "[i]t makes no difference whether the search was conducted by the band director, the principal, or the parents. When a private person is acting under the authority of the State, Fourth Amendment protections apply." Majority opinion, at 600

(citing *inter alia United States v. Walther,* 652 F.2d 788 (9th Cir. 1981)). The majority's reliance on *Walther,* however, is erroneous. *Walther* involved a private person searching for criminal contraband in concert with the police. Under those circumstances, private persons may indeed be constructive "government agents". *See State v. McKinnon,* 88 Wn.2d 75, 82, 558 P.2d 781 (1977). In the present case, however, the searches were not motivated by the enforcement of the criminal laws nor were they motivated by a search for regulatory violations which are enforced by criminal sanctions. *See Camara v. Municipal Court,* 387 U.S. 523, 531, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967). On the contrary, the luggage checks were supervisory or disciplinary and in furtherance of the school's and parents' constructive parental responsibility. *See State v. Gonzales, supra.* This is a long distance from a search for which the Fourth Amendment provides protection.

The criminal cases, to which the Fourth Amendment applies, are also distinguishable in that the evidence discovered in those cases surely would be used in criminal proceedings. In the present case, the notice sent to the participating students did not threaten criminal sanctions in the event that unlawful substances were found. Rather it provided: "If drugs or liquor are found [in the search], the student will be sent home and the parents notified to come pick him or her up." In fact, students caught with liquor on past trips were not sent to the police station; rather, their parents were asked to pick them up.

I would hold that neither the Fourth Amendment nor Const. art. 1, § 7 apply to the search in this case. To hold that parents searching children's luggage to prevent the consumption of alcohol or drugs on a nonrequired, voluntary class trip are "government agents" within the meaning of the Fourth Amendment makes a mockery of that cherished constitutional protection.

The majority citing *Jacobsen v. Seattle,* 98 Wn.2d 668, 658 P.2d 653 (1983) refers to the possible "damage to the understanding of constitutional guaranties of freedom from

unreasonable searches on the part of these young persons is incalculable." *Jacobsen,* at 674. I suggest the damage to young minds is equally incalculable from observing a court which is unable to distinguish the situation in this case from that in cases such as *Jacobsen.*

## III

Even if the Fourth Amendment and Const. art. 1, § 7 did apply, the majority's disposition of this case is erroneous. In *State v. McKinnon,* we acknowledged that the in loco parentis interest of a school in maintaining school discipline justified the lowering of the "probable cause" standard to "reasonable belief". The majority asserts that *McKinnon's* "reasonable belief" test applies to the present case since the search standard in the school environment may never drop below reasonable belief and that individualized suspicion of wrongdoing is always necessary.

The facts in this case present precisely the case in which a student may be required to submit to a search without reasonable belief or individualized suspicion. There are important differences between the search conducted in *McKinnon* and the one in the present case. Although we characterized his general duties as an administrator and not a law enforcement officer, the searching school official in *McKinnon* was actually acting more in a quasi–law enforcement manner when he conducted the search. He had received a tip from the police that a student possessed unlawful substances and his search was motivated by the discovery of those drugs. I would affirm that under those circumstances there must be an individualized suspicion of wrongdoing as set forth in *McKinnon.* In contrast, the luggage check in the present case was not motivated by nor did it in any way resemble a search for incriminating evidence. The fact that the students received prior notice of the search practically ensured that the searching chaperons would not find anything. Application of the in loco parentis doctrine is appropriate under these circumstances where the school district was in fact charged with parental–like

responsibilities.

The fact that the searchers were parents and not school officials confirms the search served a genuinely in loco parentis function. The parents and the school were charged with the difficult responsibility of supervising the students while they were visiting a foreign country. Under these circumstances, the luggage search was genuinely disciplinary in nature.

In characterizing the search as "unreasonable", the majority places strong reliance on *Jacobsen v. Seattle, supra,* in which this court held that the Seattle Police Department could not "preventatively" search rock concert patrons as they entered the Seattle Coliseum. Upholding the search here, however, is not inconsistent with *Jacobsen.* The searches in *Jacobsen* did not arise in the school context where, as noted above, the Fourth Amendment is considerably more flexible. More particularly, neither the management of the Coliseum nor the Seattle Police Department was conducting the searches in furtherance of a judicially recognized noncriminal in loco parentis duty. Instead, they were enforcing criminal laws which prohibited the possession of bottles, drugs, and other contraband.

Upholding the subject search, moreover, is not inconsistent with *Jacobsen* in that we impliedly rejected there the proposition that a search does not become constitutional merely because it is announced in advance or is conducted pursuant to a "voluntary" activity. While prior notice of a search and voluntariness of the activity standing alone do not diminish one's legitimate expectation of privacy, these factors are very relevant considerations in determining the "reasonableness" of a search in certain school contexts. For example, one factor used in *State v. McKinnon, supra,* was the fact that children are compelled by law to be in school. Here the activity for which the search was required was voluntary. The preannounced search was a relatively unintrusive way for the District and the chaperons to conduct a search. Moreover, the school trip to Canada was not an everyday activity conducted on school premises. The chap-

eron parents and the school district have assumed enormous responsibilities in conducting this trip. I express no opinion whether unannounced "spot searches" on a similar class trip or generally under any school circumstances would pass constitutional muster.

While there may exist a genuine question whether a search of this kind is the best way to maintain discipline of high school students on a class trip, and while other alternatives perhaps could have been used, I would hold it does not violate the rights of students under either the federal or state constitutions.

I dissent.

DIMMICK and ANDERSEN, JJ., concur with DOLLIVER, J.

Reconsideration denied April 3, 1985.