PEOPLE v WARD

1. SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—DUE PROCESS—EV-
IDENCE—GOVERNMENTAL ACTION.

Evidence secured by a search and seizure in violation of the
Fourth Amendment of the Federal Constitution is, through the
operation of the due process clause of the Fourteenth Amend-
ment, inadmissible in a state court; however, this prohibition
against unreasonable searches and seizures applies only to
governmental action.

2. SEARCHES AND SEIZURES—PRIVATE PROPERTY—WARRANT—CONSENT.

A search of private property, unless consented to or authorized by
a valid search warrant, generally, is unreasonable; the warrant
requirement is excused where there are exigent circumstances.

3. SEARCHES AND SEIZURES—SEARCH WITHOUT WARRANT—PROBABLE
CAUSE—REASONABLENESS.

Certain conduct, such as a border search and a "stop and frisk",
has been recognized as not being subject to the warrant proce-
dure and requires less than probable cause, but is still tested by
the Fourth Amendment's proscription against unreasonable
searches and seizures; reasonableness is determined by balanc-
ing the need to search against the invasion which the search
entails.

4. SEARCHES AND SEIZURES—STUDENTS—SCHOOLS AND SCHOOL DIS-
TRICTS—REASONABLE SUSPICION

Public school officials may not subject students to searches and
seizures unless they act upon a reasonable suspicion.

5. SEARCHES AND SEIZURES—STUDENTS—SCHOOLS AND SCHOOL DIS-
TRICTS—DRUGS AND NARCOTICS—REASONABLE SUSPICIONS.

A high school student's right against unreasonable searches and

REFERENCES FOR POINTS IN HEADNOTES
[1] 68 Am Jur 2d, Searches and Seizures §§ 2–6.
[2] 68 Am Jur 2d, Searches and Seizures § 46 *et seq.*
[3] 68 Am Jur 2d, Searches and Seizures § 41 *et seq.*
[4, 5] 68 Am Jur 2d, Searches and Seizures §§ 13, 49.
[6] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 41, 42.

seizures was not violated by a search when he was called to the school principal's office and required to empty his pockets, where the principal acted with reasonable suspicion that the defendant was selling drugs in school, the principal was told by the defendant's counselor that a teacher had seen the defendant selling pills on a number of occasions and the principal acted in a responsible and diligent manner.

6. INDICTMENT AND INFORMATION—DRUGS AND NARCOTICS—MISDE-
MEANOR—FELONY.

  A defendant convicted of knowingly or intentionally possessing LSD was adequately apprised of the crime with which he was charged, although the information mistakenly indicated the crime was a felony and not a misdemeanor, where the information was explicit in its allegations, the erroneous reference to a section of the statute on which the charge was based, and any failure to recognize that the crime was a misdemeanor and not a felony did not interfere with the factfinding process or the defense.

Appeal from Recorder's Court of Detroit, James A. Hathaway, J. Submitted Division 1 March 13, 1975, at Detroit. (Docket No. 19899.) Decided June 10, 1975. Leave to appeal denied; 395 Mich 767.

Christopher Ward was convicted of knowingly or intentionally possessing LSD. Defendant appeals. Affirmed but remanded for further proceedings.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Ronald P. Weitzman,* Assistant Prosecuting Attorney, for the people.

*Ellen C. Wallaert,* for defendant.

Before: R. B. BURNS, P. J., and T. M. BURNS and R. M. MAHER, JJ.

R. M. MAHER, J. Defendant was found guilty by

a judge, sitting without a jury, of knowingly or intentionally possessing lysergic acid diethylamide (LSD). MCLA 335.341(4)(c); MSA 18.1070(41)(4)(c). Defendant was placed on 2 years probation and appeals.

Although the record is somewhat inconsistent, it appears that a teacher at Western High School in Detroit informed defendant's guidance counselor that he had seen defendant selling and passing pills in school on a number of occasions. Defendant's counselor, in turn, reported this to the school's principal the following afternoon. The principal attempted to locate defendant but he had already left school for the day. The following morning, defendant was called into the principal's office. Present with defendant were the principal, an assistant principal, defendant's counselor, the coordinator of student activities and a security guard employed by the board of education.

Defendant was asked by the principal whether he bought or sold any drugs in school. Defendant denied ever using drugs or ever bringing drugs to school. Defendant was then asked to empty his pockets and when he hesitated, the principal threatened defendant with a personal search. Defendant then produced a bottle of pills from his pocket. The principal called the police and defendant was arrested.

Prior to trial, defendant moved to suppress the pills on the ground that they were the product of an unlawful search and seizure. This motion was denied. Defendant renewed his motion to suppress at trial but it was again denied.

The threshold question is whether the personal search of a student by a public high school official, without the aid of, or joint action with, state law enforcement officials, is subject to the Fourth

Amendment's prohibition against unreasonable searches and seizures? Evidence secured by a search and seizure in violation of the Fourth Amendment of the Federal constitution is, through the operation of the due process clause of the Fourteenth Amendment, inadmissible in a state court. *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081; 84 ALR2d 933 (1961). This prohibition against unreasonable searches and seizures, however, applies only to governmental action. *Burdeau v McDowell,* 256 US 465; 41 S Ct 574; 65 L Ed 1048 (1921). Therefore, if the school administrator in this case is considered a private individual, the evidence obtained is admissible into evidence regardless of whether his actions were reasonable or unreasonable. See *People v Harry James Smith,* 31 Mich App 366; 188 NW2d 16 (1971).

The United States Supreme Court, in *Goss v Lopez,* 419 US 565, 574; 95 S Ct 729, 736; 42 L Ed 2d 725, 734 (1975), pointed out that:

"young people do not 'shed their constitutional rights at the schoolhouse door. *Tinker v Des Moines Community School District,* 393 US 503, 506; 89 S Ct 733, 736; 21 L Ed 2d 731 (1969). 'The Fourteenth Amendment, as now applied to the States, protects the citizen against the State itself and all of its creatures * * * Boards of Education not excepted.' *West Virginia v Barnette,* 319 US 624, 637; 63 S Ct 1178, 1185; 87 L Ed 1628 (1943)."

In other words, "Public high school students do have substantive and procedural rights while at school." *Wood v Strickland,* 420 US 308, 326; 95 S Ct 992, 1003; 43 L Ed 2d 214, 227 (1975) (citations omitted), and it would be inconsistent to say that a public high school principal, acting in that capacity on school property during school hours, is not a

state official for purposes of the Fourth Amendment. This is not to say, however, that the law of search and seizure, as applied to law enforcement agencies, is incorporated into Michigan's school system.

The Fourth Amendment to the United States Constitution and Article 1, § 11 of the Michigan Constitution prohibit unreasonable searches and seizures and provide that warrants will not issue without probable cause. Generally, a search of private property, unless consented to or authorized by a valid search warrant, is unreasonable. This warrant requirement is excused where there are exigent circumstances. See, *e.g.*, *Warden v Hayden,* 387 US 294; 87 S Ct 1642; 18 L Ed 2d 782 (1967) (hot pursuit). Moreover, certain conduct, such as border searches, see *Almeida-Sanchez v United States,* 413 US 266; 93 S Ct 2535; 37 L Ed 2d 596 (1973), and "stop and frisk", see *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), has been recognized as not being subject to the warrant procedure. Such action requires less than probable cause but is still tested by the Fourth Amendment's proscription against unreasonable searches and seizures. Reasonableness is determined by "balancing the need to search against the invasion which the search entails". *Camara v Municipal Court,* 387 US 523, 537; 87 S Ct 1727; 18 L Ed 2d 930 (1967).

School officials stand in a unique position with respect to their students. They possess many of the powers and responsibilities of parents to enable them to control conduct in their schools. See *Ginsberg v New York,* 390 US 629, 639; 88 S Ct 1274; 20 L Ed 2d 195 (1968). At times, the powers and responsibilities regarding discipline and the maintenance of an educational atmosphere may conflict

with fundamental constitutional safeguards. A student cannot be subjected to unreasonable searches and seizures. On the other hand, the public interest in maintaining an effective system of education and the more immediate interest of a school official in protecting the well-being of the students entrusted to his supervision against the omnipresent dangers of drug abuse must be considered. In striking a balance, we adopt a "reasonable suspicion" standard. See *In re State in Interest of G C,* 121 NJ Super 108; 296 A2d 102 (1972), *People v Jackson,* 65 Misc 2d 909; 319 NYS2d 731 (1971), *affirmed* 30 NY2d 734; 333 NYS2d 167; 284 NE2d 153 (1972), *State v Baccino,* 282 A2d 869 (Del Super, 1971). Could the principal in this case have reasonably suspected that defendant had drugs on his person when he required defendant to empty his pockets? We think so.

The principal in the present case was told by defendant's counselor that defendant had been seen selling pills by a teacher on a number of occasions. The principal was not able to talk to defendant until the following morning when defendant was asked about his involvement in drug-related activities and required to empty his pockets. We feel that the principal acted in a responsible and diligent manner. He was not acting arbitrarily but with "reasonable suspicion" that defendant was selling drugs in school. Defendant's right against unreasonable searches and seizures was not violated.

Although not questioned below, see MCLA 767.76; MSA 28.1016, or on appeal, the information in this case charged that defendant "unlawfully did knowingly or intentionally possess a controlled substance, to wit: twenty-eight (28) tablets containing lysergic acid diethylamide (LSD), con-

trary to the provisions of MCLA 335.341(4)*(b)".* (Emphasis supplied.) That section reads:

"(4) It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this act. Any person who violates this subsection with respect to:

\* \* \*

"(b) A controlled substance classified in schedules 1, 2, 3 or 4 except a controlled substance classified in schedule 1 for which a penalty is prescribed in subdivisions (a), (c) or (d), is guilty of a felony punishable by imprisonment for not more than 2 years or by a fine of not more than $2,000.00, or both."

Subdivision (c), referred to in the above subdivision (b), reads:

"(c) Lysergic acid diethylamide, peyote, mescaline, dimethyltryptamine, psilocyn, psilocybin or a controlled substance classified in schedule 5, is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or by a fine of not more than $1,000.00, or both."

The distinction is obvious. Violation of subdivision (b) constitutes a felony; whereas violation of subdivision (c) is a misdemeanor. The subdivision applicable to the present case is (c).

Defendant was found guilty of knowingly or intentionally possessing LSD and sentenced, on February 6, 1974, to 2 years probation. Defendant was adequately apprised of the crime with which he was charged. MCLA 767.45(1); MSA 28.985(1). The information is explicit in its allegations and the concluding reference to the section of the statute under which the charge is based is mere surplusage. *People v Murn,* 220 Mich 555; 190 NW

666 (1922), *People v Lane,* 124 Mich 271; 82 NW 896 (1900). Any failure to recognize that this crime was a misdemeanor and not a felony did not interfere with the fact finding process or the defense. Defendant did not contest his guilt, only the manner in which the evidence was obtained.

Furthermore, we are aware that the sentence imposed did not exceed the statutory maximum period of probation for an offense not a felony. See MCLA 771.2; MSA 28.1132. However, in order to be certain that defendant was sentenced without any confusion as to the seriousness of the crime for which he has been convicted, we remand this case to the trial court. If the trial court finds that it sentenced defendant while under the impression that defendant had committed a felony, the trial court may wish to reduce defendant's sentence. On the other hand, if the trial court knew full well that defendant had been convicted of a misdemeanor, it may wish to maintain the sentence previously imposed.

Affirmed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.