## STATE IN THE INTEREST OF T. L. O.

Juvenile and Domestic Relations Court
Middlesex County

September 26, 1980.

330

332

*Frederick A. Simon* for movant (*Rosenberg & Simon*, attorneys).

*Kenneth J. Lebrato*, Assistant Prosecutor, for the State of New Jersey.

NICOLA, P.J.J. & D.R.

This written opinion is intended to supplement the oral opinion previously rendered by the court.

A complaint was filed in this court alleging that a 15-year-old juvenile possessed marijuana with the intent to distribute, in violation of *N.J.S.A.* 24:21–20(a)(4) and 24:21–19(a)(1). The juvenile, herein referred to as T.L.O., was accused of illegally possessing marijuana found in her purse. Evidence obtained through a search of the juvenile's purse by a school's vice-principal indicated that the juvenile had been selling marijuana to other students in school.

Prior to this hearing on the complaint the juvenile filed a motion in the Superior Court, Middlesex County, Chancery Division, to show cause why T.L.O. should not be reinstated in school, having been suspended for smoking cigarettes and possessing marijuana. Judge David Furman, J.S.C., heard the matter on March 31, 1980 and upheld the suspension for smoking cigarettes but vacated the suspension imposed for possession of marijuana. The court found that the suspension for possession of marijuana resulted from evidence obtained in a warrantless search of the juvenile's purse, in violation of the Fourth Amendment's guarantees against unreasonable searches and seizures.

Presently before the court for its consideration is a motion to dismiss the complaint and suppress the evidence. The juvenile

argues that the complaint should be dismissed on the basis of *res judicata* and collateral estoppel stemming from the prior proceeding. Additionally, the juvenile argues that her due process rights were violated by an unlawful search and seizure conducted by the assistant vice-principal and seeks to have this evidence suppressed.

This complaint arises from an occurrence on March 7, 1980. A Piscataway High School teacher observed the juvenile and another girl smoking cigarettes while in the girls' lavatory. The teacher escorted the girls to the assistant vice-principal's office and accused them of violating the school's no-smoking restriction. When asked by the vice-principal whether she had, in fact, been smoking in the girls' room, T.L.O. replied that "she didn't smoke at all." With this conflicting response the vice-principal requested the student's purse and upon inspection found a package of cigarettes plainly visible. While removing the cigarettes, marijuana and marijuana paraphernalia became visible. Further inspection revealed $40.98 in single dollar bills and change, as well as a handwritten letter by T.L.O. to a friend asking her to sell marijuana in school.

The assistant vice-principal summoned the police and turned over the marijuana and paraphernalia to them. The juvenile's parents were also notified. In the presence of her mother at police headquarters, T.L.O. admitted to selling marijuana in school, after being advised of her rights. She stated that on the day in question, she had sold approximately 18 to 20 marijuana cigarettes for a price of one dollar each.

T.L.O. was suspended from school for three days for smoking cigarettes and seven days for possession of marijuana. As previously indicated, the juvenile obtained an order to show cause why she should not be reinstated in school. At the hearing on that matter the judge found that the search conducted by the vice-principal violated the Fourth Amendment guarantees. Any consent to the search of the purse by the juvenile was ruled ineffective due to a failure to advise her that she had a right to withhold such consent.

The juvenile now seeks to raise the findings of the civil proceeding as a bar to this matter through a motion to dismiss. She asserts the doctrines of *res judicata* and collateral estoppel. Additionally, the juvenile wishes to suppress the evidence by addressing the constitutionality of the search conducted by the vice-principal.

This court will first address the constitutionality of the search and seizure; more specifically, the issue is whether or not a school official is subject to the Fourth Amendment and the standard of probable cause which must exist before said official may engage in a search of a student on school grounds in order to enforce a disciplinary rule.

The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . . ."

The Fourth Amendment does not prohibit all searches and seizures, but only unreasonable ones. The reasonableness of a search is determined by a balancing of the government's interests in conducting a search with the individual's right to be free from intrusion. *See Camara v. Municipal Court,* 387 *U.S.* 523, 87 *S.Ct.* 1727, 18 *L.Ed.2d* 930 (1967). Generally, police officials are required to obtain a search warrant based upon probable cause except for a few "jealously and carefully drawn" exceptions. *Coolidge v. New Hampshire,* 403 *U.S.* 443, 91 *S.Ct.* 2022, 29 *L.Ed.2d* 564 (1971). To avoid circumvention of the probable cause requirement through warrantless searches the same standard of probable cause is imposed to justify a warrantless search. *Wong Sun v. United States,* 371 *U.S.* 471, 83 *S.Ct.* 407, 9 *L.Ed.2d* 441 (1963). There have been instances, however, where the government's need to search has been held to outweigh the intrusion upon the person's privacy, and the Supreme Court has allowed a lower standard as justification for a constitutionally valid search. *Terry v. Ohio,* 392 *U.S.* 1, 88, *S.Ct.* 1868, 20 *L.Ed.2d* 889 (1968) (stop and frisk); *United States v. Mar-*

*tinez-Fuerte,* 428 *U.S.* 543, 96 *S.Ct.* 3074, 49 *L.Ed.2d* 1116 (1976) (routine stops at permanent border checkpoints).

■ The Supreme Court, however, has long been vigilant in protecting the rights secured by the Fourth Amendment, as is evidenced by its adoption of the exclusionary rule. The exclusionary rule, as enunciated in *Weeks v. United States,* 232 *U.S.* 383, 34 *S.Ct.* 341, 58 *L.Ed.* 652 (1914), allows suppression of evidence seized in violation of the Fourth Amendment. Initially applied only in federal courts, *Mapp v. Ohio,* 367 *U.S.* 643, 81 *S.Ct.* 1684, 6 *L.Ed.2d* 1081 (1961) has since extended the rule to the states through the Fourteenth Amendment. However, the court has held that the Fourth Amendment's proscription only applies to unreasonable searches and seizures made by governmental officials. *Burdeau v. McDowell,* 256 *U.S.* 465, 41 *S.Ct.* 574, 65 *L.Ed.* 1048 (1921).

The vigilance of the Supreme Court is evidenced as well by its recognition of the constitutional rights and protections belonging to juveniles. *In re Gault,* 387 *U.S.* 1, 87 *S.Ct.* 1428, 18 *L.Ed.* 2d 527 (1967) (procedural due process); *In re Winship,* 397 *U.S.* 358, 90 *S.Ct.* 1068, 25 *L.Ed.2d* 368 (1970) (requiring proof beyond a reasonable doubt).

■ The court has made it clear that juveniles, as students, do not lose their constitutional rights when they enter the school house. *Tinker v. Des Moines School Dist.,* 393 *U.S.* 503, 89 *S.Ct.* 733, 21 *L.Ed.2d* 731 (1969). *Tinker* involved an expression of First Amendment rights by high school students. The students were suspended for wearing black arm bands to protest the hostilities of the Vietnam War. The court held that the students' actions constituted speech protected by the First Amendment to the Constitution, and that they therefore could not be suspended for expressing their views in a non-disruptive manner:

> The principal use to which the schools are dedicated is to accommodate students during prescribed hours for the purpose of certain types of activities. Among those activities is personal intercommunication among the students.

This is not only an inevitable part of the process of attending school; it is also an important part of the educational process. A student's rights, therefore, do not embrace merely the classroom hours. When he is in the cafeteria, or on the playing field, or on the campus during the authorized hours, he may express his opinions, even on controversial subjects like the conflict in Vietnam, if he does so without "materially and substantially interfer[ing] with the requirements of appropriate discipline in the operation of the school" and without colliding with the rights of others. *Burnside v. Byars*, 363 F.2d 744, 749 (5th Cir. 1966). [*Tinker v. Des Moines School Dist.*, 393 *U.S.* at 512–13, 89 *S.Ct.* at 739–40; footnotes omitted]

Yet, the court specifically went on to limit the First Amendment rights given to students:

But conduct by the student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech. [Ibid.]

This limitation, intended to protect the classroom decorum, was also recognized in *Goss v. Lopez*, 419 *U.S.* 565, 95 *S.Ct.* 729, 42 *L.Ed.2d* 725 (1975). Although *Tinker* and *Goss* did not deal with the Fourth Amendment rights of students, the same recognition of schoolroom decorum appears to be appropriate when dealing with Fourth Amendment rights. *State v. McKinnon*, 88 *Wash.2d* 75, 558 *P.2d* 781 (Sup.Ct.1977).

Indeed, the rights of juveniles are not coextensive with the rights of adults, regardless of their student status. The Supreme Court has stated:

... [E]ven where there is an invasion of protected freedoms "the power of the state to control the conduct of children reaches beyond the scope of its authority over adults ... The well-being of its children is of course a subject within the State's constitutional power to regulate ... [P]arents and others, teachers for example, who have this primary responsibility for children's well-being are entitled to the support of laws designed to aid discharge of that responsibility." [*Ginsberg v. New York*, 390 *U.S.* 629, 638–639, 88 *S.Ct.* 1274, 1280, 20 *L.Ed.2d* 195]

A teacher's responsibility for and control over a student is derived from the concept of *in loco parentis*. It is stated as a general rule that the teacher stands in the place of the pupil's parents, and may exercise powers necessary to control, restrain and correct students within reason, to enable him to properly perform his duties and provide a proper education. 79 *C.J.S.*,

*Schools,* § 493.   In New Jersey the concept is applied through statute requiring the student to recognize the authority of the teacher.   The pertinent statute states:

> Pupils in the public schools shall comply with the rules established in pursuance of law for the government of such schools, pursue the prescribed course of study and submit to the authority of the teachers and others in authority over them.   [*N.J.S.A.* 18A:37–1]

See, also, *N.J.S.A.* 18A:37–2 to 5, 18A:25–2.

A number of courts have already addressed the issue of searches of students in school by school officials.   Their approaches to the applicability of the Fourth Amendment and the exclusionary rule have varied and may be placed in the following categories:

(1) The Fourth Amendment does not apply because the school official acted *in loco parentis,* that is, he stands in the place of the parents;   *In re G,* 11 *Cal.App.*3d 1193, 90 *Cal.Rptr.* 361 (D.Ct.App.1970);   *In re Donaldson,* 269 *Cal.App.*2d 509, 75 *Cal. Rptr.* 220 (D.Ct.App.1969);   *People v. Stewart,* 63 *Misc.*2d 601, 313 *N.Y.S.*2d 253 (1970);   *Commonwealth v. Dingfelt,* 227 *Pa.Super.* 380, 323 *A.*2d 145 (Super.Ct.1974);   *Mercer v. State,* 450 *S.W.* 2d 715 (Tex.Civ.App.1970);

(2) The Fourth Amendment applies, but the exclusionary rule does not;   *Doe v. Renfrow,* 475 *F.Supp.* 1012 (N.D.Ind.1979);   *United States v. Coles,* 302 *F.Supp.* 99 (D.Me., N.D. 1969);   *State v. Young,* 234 *Ga.* 488, 216 *S.E.*2d 586 (Sup.Ct.1975);   *State v. Wingerd,* 40 *Ohio App.*2d 236, 318 *N.E.*2d 866 (Ct.App.1974);

(3) The Fourth Amendment applies but the doctrine of *in loco parentis* lowers the standard to be applied in determining the reasonableness of the search;   *Bilbrey v. Brown,* 481 *F.Supp.* 26 (D.C.Or., 1979);   *In re W.,* 29 *Cal.App.*3d 777, 105 *Cal.Rptr.* 775 (D.Ct.App.1973);   *In re C.,* 26 *Cal.App.*3d 320, 102 *Cal.Rptr.* 682 (D.Ct.App.1972);   *State v. Baccino,* 282 *A.*2d 869 (Del.Super. 1971);   *State v. F.W.E.,* 360 *So.*2d 148 (Fla.D.Ct.App.1978);   *People v. Ward,* 62 *Mich.App.* 46, 233 *N.W.*2d 180 (App.Ct.1975);   *In re G.C.,* 121 *N.J.Super.* 108, 296 *A.*2d 102 (J.Dr.Ct.1972);   *Doe v. State,* 88 *N.M.* 347, 540 *P.*2d 827 (Sup.Ct.1975);   *People v. Single-*

*tary*, 37 *N.Y.2d* 310, 372 *N.Y.S.2d* 68, 333 *N.E.2d* 369 (Ct.App. 1975); *People v. D.*, 34 *N.Y.2d* 483, 358 *N.Y.S.2d* 403, 315 *N.E.2d* 466 (Ct.App.1974); *People v. Jackson*, 65 *Misc.2d* 909, 319 *N.Y.S. 2d* 731 (App.Term, 1st Dept. 1971), aff'd, 30 *N.Y.2d* 734, 333 *N.Y.S.2d* 167, 284 *N.E.2d* 153 (Ct.App.1972); *State v. McKinnon*, 88 *Wash.2d* 75, 558 *P.2d* 781 (Sup.Ct.1977); *In re L.L.*, 90 *Wis.2d* 585, 280 *N.W.2d* 343 (Sup.Ct.1979);

(4) The Fourth Amendment applies and requires a finding of probable cause in order for the search to be reasonable; *Picha v. Wielgos*, 410 *F.Supp.* 1214 (W.D.Ill.1976); *State v. Mora*, 307 *So. 2d* 317 (La.1975), vacated 423 *U.S.* 809, 96 *S.Ct.* 20, 46 *L.Ed.2d* 29; 330 *So.2d* 900 (La.1976).

█ This court, in accordance with the New Jersey case of *In re G.C.*, decided by a court of comparable jurisdiction, finds that public school officials are to be considered governmental officers, and therefore the approach taken by the preceding category of cases, which holds the Fourth Amendment applicable to school searches but lowers the reasonableness standard as a result of the application of the *in loco parentis* doctrine, to be the most persuasive.

The court in the recent case of *In re L.L.*, in a review of the authorities on this issue, analyzed the interests involved which allowed the lower standard sufficient to satisfy the Fourth Amendment requirement of reasonableness. These interests may be summarized as: (1) the State's strong interest in providing an education in an "orderly atmosphere which is free from danger and disruption"; (2) the student's reasonable expectation of privacy while in school, which is lower than in other places because of the expected restraint exercised over students for security or discipline; (3) "the realities of the classroom present few less intrusive alternatives to an immediate search for suspected dangerous or illegal items or substances." 90 *Wis.2d* at 600–601, 280 *N.W.2d* at 350–51.

The Federal District Court in *Doe v. Renfrow* considered the factor of an absence of any normal or justifiable expectation of

privacy on behalf of the students. The court stated that students cannot be said to enjoy any absolute expectation of privacy while in the classroom setting because of the constant interaction among students, faculty and school administrators. A reasonable right to inspection is necessary for the school's performance of its duty to protect all students and the educational process. The court went on to state:

> There is no question as to the right, and indeed, the duty of school officials to maintain an educationally sound environment within the school. It is the responsibility of the school administrator to insure the proper functioning of the educational process .... Maintaining an educationally productive atmosphere within the school rests upon the school administration certain heavy responsibilities. One of these is that of providing an environment free from activities harmful to the educational function and to the individual student. [475 F.Supp. at 1020]

In accordance with the foregoing standards, the United States District Court, in *Bilbrey v. Brown*, 481 *F.Supp.* 26 (D.Or.1979), a case in which plaintiffs challenged the constitutionality of a school district's search and seizure policies as set forth in the district's "Minimum Standards for Student Conduct and Discipline," held that such searches may properly be conducted when a school official has reasonable cause to believe a student has violated school policy.

Therefore, this court finds that a school official may properly conduct a search of a student's person if the official has a reasonable suspicion that a crime has been or is in the process of being committed, *or* reasonable cause to believe that the search is necessary to maintain school discipline or enforce school policies.

The present case deals with a school standard of discipline and not criminal activity. The standard of reasonableness must be applied, whether we are dealing with noncriminal activity or a school standard of discipline. A reasonable standard is defined as one designed to protect the health, safety and welfare of the child involved, as well as the student population. School officials, therefore, have the right to deliberately restrict smoking to certain areas within the school. Such designations

are not arbitrary, but rather based on the school official's experience and knowledge of fire codes and standards. When a school drafts its smoking regulations it considers the following factors: the structure of the building with respect to fire resistance (e. g., fire walls); the ability to control smoking in the area where it is permitted (e. g., by teacher supervision) in order to insure that the privilege is not abused and to reduce the threat of hostile fires; the availability of fire escapes. A further consideration, of increasing importance, is the right of the nonsmoking student to be free from exposure to the detrimental effects of cigarette smoke. Certainly the potential harm and detrimental effect that can be caused by the abuse of smoking privileges are as serious as those which may result from criminal activity committed within the schools. School officials, therefore, must have the same rights to investigate and control the abuse of noncriminal activities as they do in instances involving weapons and drugs. Thus, this court finds that the school's nonsmoking regulation has satisfied the reasonableness standard.

While accepting a lower standard in determining the reasonableness of a search, this court is aware of the other factors which the courts have stated would be considered in determining the sufficiency of cause to search. The factors to be judged are: (1) the child's age, history and school record; (2) the prevalence and seriousness of the problem in the school to which the search was directed; (3) the exigency of the situation requiring an immediate warrantless search; (4) the probative value and reliability of the information used as a justification for the search; (5) the teacher's prior experience with the student. *In re L.L., State v. McKinnon, Bellnier v. Lund, Doe v. State,* all *supra.* These factors should serve as a guideline in determining whether some reasonable suspicion of a crime or violation of school regulation has occurred.

Applying the foregoing to the facts of this case, it is apparent that the vice-principal had a right to conduct a search

of the student. A teacher had observed the student smoking in an area where such was prohibited. Although the student denied smoking, the school official had a duty to investigate and determine whether a violation of the school's code had occurred. The nature of this situation dictated the actions taken by the vice-principal.

Although the vice-principal was justified in opening the purse, an exploratory search was not permissible. His limited purpose was to determine whether the violation, which was reasonably suspected, had, in fact, occurred. However, once the purse was open, the contents were subject to the "plain view" doctrine—an exception to the warrant requirement. Under the plain view doctrine a law enforcement officer may seize any object that is in his plain view if he has a right to be in the position to have that view. *Harris v. United States*, 390 *U.S.* 234, 88 *S.Ct.* 992, 19 *L.Ed.2d* 1067 (1968); *State v. McKnight*, 52 *N.J.* 35 (1968). Upon finding the marijuana and paraphernalia, the vice-principal was justified in continuing his search to determine the extent of that violation.

Concerning the juvenile's motion to dismiss, the issue raised is whether the present criminal proceeding in Juvenile and Domestic Relations Court is barred by the former hearing at which the juvenile sought reinstatement in school. As stated, the juvenile contends that the complaint should be dismissed on the basis of *res judicata* and collateral estoppel. The State argues that those doctrines which have been incorporated into the criminal law through the Double Jeopardy Clause, are inapplicable and do not bar the present proceeding.

In *State v. Redinger*, 64 *N.J.* 41 (1973), our Supreme Court stated:

"Collateral estoppel has been described as an awkward phrase. Essentially, it means that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 *U.S.* 436, 443, 90 *S.Ct.* 1189, 1194, 25 *L.Ed.2d* 469 (1970). In *Ashe*, the Supreme Court held that collateral estoppel as applied in the Federal decisions must be considered a part

of the Fifth Amendment's guaranty against double jeopardy and binding on the States through the 14th Amendment under *Benton v. Maryland*, 395 *U.S.* 784, 89 *S.Ct.* 2056, 23 *L.Ed.2d* 707 (1969). [at 45–46]

The applicability of collateral estoppel to the present case appears to hinge upon the question of sufficiency of identity of the parties in the two proceedings. A similar situation was considered in *Kugler v. Banner Pontiac-Buick, Opel, Inc.*, 120 *N.J. Super.* 572 (Ch.Div.1972). In that case the Attorney General filed a complaint against the defendant for a consumer fraud violation, seeking relief under the applicable statute. An order to show cause was issued under the Consumer Fraud Act. At the return hearing on the order to show cause defendant moved to discharge the order based on the doctrines of *res judicata* and collateral estoppel. Prior to the filing of the complaint defendant had appeared in the municipal court on a violation of a similar statute. In that proceeding defendant was acquitted upon the same operative facts. As a result, the court in the second proceeding was confronted with the issue of whether collateral estoppel would apply to the action taken by the Attorney General.

That court considered the identity of the parties a requisite to the application of that doctrine and stated: "Certainly it could not have been intended that a proceeding in the name of the State by a local prosecutor would forever collaterally stop the Attorney General in an *ex rel.* action or as legal advisor and attorney to an administrative agency." 120 *N.J.Super.* at 580. As a result, the court denied defendant's motion to dismiss on the grounds of *res judicata* and collateral estoppel.

In the present case the juvenile argues that the parties involved in the prior proceeding are identical in interest with those in the present hearing. She argues that although the State of New Jersey was not named in the prior proceeding concerning the student's reinstatement, the Piscataway Board of Education stood in precisely the same position as the State does in this hearing. However, this court finds, in accordance with the reasoning of the court in *Kugler*, that the State's goal is substantially different from that of the board of education.

The distinctions between the powers an duties of the county prosecutor and board of education are delineated in the statutes. Compare *N.J.S.A.* 18A:11–1 with *N.J.S.A.* 2A:158–5. It is obvious that the board of education is not subject to the same mandate as the prosecutor, to "use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws." *N.J.S.A.* 2A:158–5. In contrast, administration and management of the school districts are properly understood to be the function of the board of education.

In this case the parties are even more distinct entities than in *Kugler*. There, as here, both parties were arms of the State. But in *Kugler*, both parties were involved in the enforcement of the law as well. And even though the prior prosecution in that case concluded with an acquittal, the court still found that it would not bar the latter proceeding. That court recognized the injustice which would result by permitting actions brought on behalf of the State under the Consumer Fraud Act to be barred by similar actions in municipal court. The same reasoning is applicable here. Although the board of education was involved in the hearing to reinstate the juvenile in school, its appearance cannot be found to adequately represent the State's prosecutorial interests. To allow the State to be bound in this case by the decision in the prior hearing would deny the State its opportunity to prosecute this juvenile and thereby carry out its mandate.

While there was a prior determination on the constitutionality of the search at issue here, the concepts of collateral estoppel, *res judicata* and double jeopardy to not dictate a bar to this proceeding. Consequently, the motion to dismiss is denied and the matter is to be listed for trial.