LARRY G. SMITH, Judge.
In this opinion we apply the reasonable suspicion standard for searches conducted on a public primary or secondary school campus. In so doing we reverse the lower court’s order granting a motion to suppress marijuana and drug paraphernalia.
D.T.W., the appellee, a student at a Jacksonville area high school, parked his ear in the school parking lot. During a school lunch hour, a high school teacher’s aide to the Dean started patrolling the parking lot. An employee of the school board, he had been hired to patrol the hallways and parking lots to make sure the school code was not being violated. He routinely checked the parking lots and sometimes looked into cars.
On the day in question the aide happened to look into appellee’s car and spied a partially covered object that he was able to identify as a “bong.”[1] The Dean of boys *1385 and the appellee were summoned. The Dean advised appellee that the school had the right to search his car. According to the Dean and the security guard, appellee was asked if they could search his car. Ap-pellee contended that the Dean threatened to call the police if he didn’t hand over the keys and permit a search of the car. Regardless of the version of the facts one accepts, it is uncontested that appellee turned over his car keys.
The “bong” was removed from the car, and in the process a package of Marlboro cigarettes was found in plain view lying on the console inside the car. The package was seized, since possession of cigarettes is prohibited by school regulations. The package, when opened, was found to contain marijuana cigarettes. The appellee was subsequently charged with the possession of both a controlled substance and drug paraphernalia.
Appellee filed a motion to suppress the evidence based upon an unreasonable search and seizure. The lower court granted the motion,' finding: 1) that school officials need have only a “reasonable suspicion” to search a child or his property while at school; 2) that the initial broad search of the parking lot could not be justified based on either the probable cause or reasonable suspicion standard; and 3) that the evidence was not sufficiently clear and convincing to show that the appellee voluntarily consented to the search. We affirm the trial judge’s application of the “reasonable suspicion” standard, but we disagree with his ruling on the second point, and find that the third point, consent to the search, is moot.
Initially, we note that in Nelson v. State, 319 So.2d 154 (Fla. 2nd DCA 1975), our sister court adopted the reasonable suspicion standard for a search and seizure on a public school campus. This court found the Nelson court’s reasoning quite persuasive and utilized the reasonable suspicion standard in reaching a determination in State v. F.W.E., 360 So.2d 148, 150 (Fla. 1st DCA 1978). Other decisions of this court have alluded to applicability of the reasonable suspicion standard. W.J.S. v. State, 409 So.2d 1209 (Fla. 1st DCA 1982); M.J. v. State, 399 So.2d 996 (Fla. 1st DCA 1981).
So that there is no doubt as to this issue, we affirm the trial court’s determination to apply the reasonable suspicion standard to searches and seizures at public primary and secondary schools when the search is executed by school officials.[2] This view is in line with the perceptions of the Nelson court, and with the emerging national trend of the law in other jurisdictions.[3] We note also that the 1982 Florida Legislature has expressly incorporated the “reasonable suspicion” standard into the statutory law of the state in Section 232.256, Florida Statutes (1982), authorizing a school principal or school employee designated by the principal to search a student’s locker or other storage area if there is “reasonable suspicion that a prohibited or illegally possessed substance or object” is contained within the locker or storage area. Section 232.256, subsections (1), (2).
*1386 The public interest in varying the degree of probable cause from traditional criminal standards, in the public primary or secondary school setting, has been carefully scrutinized by courts in other jurisdictions. See, e.g., State In the Interest of T.L.O., supra, footnote 3, at 428 A.2d 1333 and People v. D., supra, footnote 3, at 358 N.Y.S.2d 405-06, 315 N.E.2d 468-469.[4] As expressed by the Wisconsin Court of Appeals, the public interest is in education, upon which society places a high value. It “requires an orderly atmosphere which is free from danger and disruption. The introduction of dangerous or illegal items or substances into the school presents a hazard for teachers and students.” In the Interest of L.L., supra, footnote 3, at 280 N.W.2d 350. Because students are compelled by law to attend school,[5] the state has a legitimate and compelling interest — if not a duty — in assuring both parents and students that the large number of law abiding students will not be victimized by the criminal few. Accord: People v. D., supra; Ward, supra, footnote 3. at 233 N.W.2d 183.
This significant public interest, operating in conjunction with the doctrine of in loco parentis provides, in our opinion, ample justification for a lowered expectation of privacy on the part of students. Teachers and other school personnel act in loco parentis or in place of parents to a certain degree. Nelson, supra, at 156. This is so because school officials are charged by law with the control and discipline of students. Sections 230.23(6)(c); 232.25-232.28, Florida Statutes; 29 Fla.Jur. Schools §§ 110-112 (1967). Consequently, while the Constitution limits the power of school officials and provides the student with a reasonable expectation of privacy, the doctrine of in loco parentis expands the power of school officials and lowers the student’s expectation of privacy. In Re W., supra, footnote 3, at 105 Cal.Rptr. 777.[6]
From the above, it seems clear that the realities of the school setting require that teachers and other school personnel have the power to make an immediate, limited search, for contraband, weapons, or other prohibited objects or substances, when a reasonable subjective suspicion supported by objective, articulable facts would lead a reasonably prudent person to suspect that these items are present, or that school regulations are being violated.[7]
Maintenance of discipline often requires immediate action; it cannot await the procurement of a search warrant based on probable cause. McKinnon, supra, footnote 3, at 558 P.2d 784. So long as the school employee or official has a reasonable suspicion and is pursuing the public’s legitimate *1387 interest in maintaining order, discipline, safety, and education, the Fourth Amendment does not require that a warrant be obtained before conducting a search. Bil-brey, supra, footnote 3, at 28.
To assist in determining whether a reasonable suspicion to search exists, several factors have been suggested, including consideration of the child’s age, history and record in school; the prevalence and seriousness of the problem in the school to which the search was directed; the exigencies in making a search without delay and further investigation; the probative value and reliability of the information used as a justification for the search; and the particular teacher or school official’s experience with the student. See, State In the Interest of T.L.O., supra, at 428 A.2d 1334; In the Interest of L.L., supra, at 280 N.W.2d 351; and People v. D., supra, at 315 N.E.2d 470. These factors are neither mandatory considerations nor an exhaustive and complete list of all the considerations possible in determining if a reasonable suspicion to search exists. But they are a starting point.
In this case, the lower court determined that the initial patrol through the parking area, in which the teacher’s aide to the Dean looked through the appellee’s car window and saw the bong, was without probable cause or reasonable suspicion, because the teacher’s aide did not have reason to believe that any vehicle contained contraband or weapons. However, upon viewing the facts of this case in the light of the foregoing principles, it appears to us that the action of the teacher’s aide was fully justified and reasonable, and not a “search” within the prohibition of the Fourth Amendment.
The teacher’s aide testified that he was looking for “suspicious things” and that he routinely patrolled the parking lot as part of his duties. Thus, his duties would clearly encompass looking for contraband, checking to make sure no one was trying to break into a student’s car, and patrolling to supervise students in the lot during their lunch hour. We observe that the parking lot was a public place, open to all students and school officials, where the expectation of privacy would be only minimal.
The teacher’s aide further stated that there had been problems with weapons in students’ cars and that he had encountered these problems. The evidence thus points to the existence of particular problems of legitimate concern to school officials, and the particular school official’s experience in dealing with those problems. Considering that our public schools have a generally recognized duty to control and supervise students on campus,[8] failure to fulfill this obligation by school personnel could subject school authorities to liability for injuries to a student resulting from such failure. See, Bryant v. School Board of Duval County, 399 So.2d 417, 420 (Fla. 1st DCA 1981), modified 417 So.2d 658 (Fla.1982).
Under the circumstances presented, we hold that neither probable cause nor reasonable suspicion was required in order to justify the patrolling and supervisory activities of the teacher’s aide, nor to justify his spotting of an object within appel-lee’s vehicle which was readily visible and identifiable from outside the vehicle. Since the teacher’s aide had a right and a duty to be where he was, peering into the window and seeing the “bong” in open view in ap-pellee’s car was nothing more than a legally permissible pre-intrusive open view. Ensor v. State, 403 So.2d 349, 352 (Fla.1981).[9] Seeing what he reasonably thought was a “bong,” he had at a minimum a reasonable *1388 suspicion to believe school regulations had been violated. As the Dean noted in his testimony, possession of a waterpipe on campus was prohibited by school regulations. At this point, the Dean was legally authorized to enter the car and retrieve the bong. Such an act was a limited intrusion on appellee’s expectation of privacy based on far more than a reasonable suspicion.[10]
In the process of retrieving the “bong” from the car, the Dean observed a package of cigarettes on the console in plain view pursuant to a “prior valid intrusion.” Ensor, supra, at 352. The Dean had the right to confiscate the contraband package of cigarettes and to open it to determine that it in fact contained cigarettes. As previously noted, it contained marijuana. We find no unlawful search or seizure in such actions.
Under our ruling we have found that the school officials had a reasonable suspicion justifying the search of the vehicle. Therefore, the issue of consent to search, addressed by the trial court is moot.
The order granting the motion to suppress is REVERSED, and this cause is REMANDED for further proceedings not inconsistent with this opinion.
WENTWORTH, J., and McCORD, GUYTE, P., Jr., Associate Judge (Retired), concur.

. Section 893.145(12)(/), Florida Statutes (Supp.1980), which defines “drug paraphernalia” to include a “bong” does not define the term; nor does any dictionary we have examined. The school officials below seem to equate a bong with a waterpipe. At least one other court has drawn a similar conclusion. See State v. Jordan, 29 Wash.App. 924, 631 P.2d 989, 990 (1981). Alternatively, courts have referred to a bong as a pipe, Taylor v. State, 604 S.W.2d 175, 179 (Tex.Cr.App.1980); as a hash pipe, State v. Peller, 37 Or.App. 467, 587 P.2d 510, 512 (1978); and merely as a “smoking device,” apparently used in conjunc *1385 tion with marijuana. Goodner v. State, 546 P.2d 653, 656 (Okl.Cr.App.1976).

. The reasonable suspicion standard does not apply in cases involving a search directed or participated in by a police officer. M.J. v. State, supra, at 998.

. See, e.g., State In the Interest of T.L.O., 178 N.J.Super. 329, 428 A.2d 1327, 1333 (Juv. & Dom.Rel.Ct.1980); In the Interest of L.L., 90 Wis.2d 585, 280 N.W.2d 343, 351 (1979); Bilbrey v. Brown, 481 F.Supp. 26, 28 (D.Or.1979); State v. McKinnon, 88 Wash.2d 75, 558 P.2d 781, 784 (1977); People v. Ward, 62 Mich.App. 46, 233 N.W.2d 180, 183 (1975); Doe v. State, 88 N.M. 347, 540 P.2d 827, 832 (1975); People v. D. 34 N.Y.2d 483, 358 N.Y.S.2d 403, 315 N.E.2d 466, 469 (1974); In Re W., 29 Cal. App.3d 777, 105 Cal.Rptr. 775 (1973); and State v. Baccino, 282 A.2d 869, 872 (Del.Super.1971); contra, Picha v. Wielgos, 410 F.Supp. 1214 (N.D.Ill.1976) (principal acting on phone tip contacted police, then had girls searched by nurse; court accepted lesser standard where related to discipline or safety, but held probable cause required where essentially criminal investigation); see also Admissibility in criminal case of evidence obtained by search conducted by school official or teacher, 49 A.L.R.3d 978 (1973). See also Search of students by school officials, 5 Fla.State L.Rev. 526 (1977).

. We note that the ordinary requirements of the Fourth Amendment have often been modified to accomodate legitimate public interests in other settings, as for example, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (stop and frisk); Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (administrative search); United States v. Ramsey, 431 U.S. 606, 97 S.Ct. 1972, 52 L. Ed.2d 617 (1977) (border searches); United States v. Davis, 482 F.2d 893 (9th Cir.1973) (airline passenger searches at airports). In each case any deviation from the traditional probable cause standard utilized in criminal cases is based, in part, on the reasonableness of a valid public interest in justifying an intrusion upon the individual’s legitimate expectation of privacy. Camara, supra, at 387 U.S. 539, 87 S.Ct. at 1736.

. Sections 230.23(6)(b); 232.01, Florida Statutes (1981).

. The courts are not unanimous in accepting the in loco parentis doctrine as the basis for the special powers accorded to school officials. See, Horton v. Goose Creek Independent School District, 690 F.2d 470 (5th Cir.1982), (withdrawing opinion 677 F.2d 471), stating, at page 481, footnote 18: “We agree with most courts that school officials have special duties with associated powers, but we prefer not to tie them to the in loco parentis doctrine. Instead we view the school as a special situation, in the same way that the border or an airport presents a special situation, requiring the courts to allow some intrusions on otherwise protected privacy.”

.Even in the absence of reasonable suspicion, under this court’s opinion in W.J.S. v. State, supra, school officials have the authority to temporarily detain a student, on the school premises, for the purpose of taking the student to office of an assistant principal for the purpose of having him “checked out,” although the validity of any subsequent search would depend upon the circumstances and conditions then existing. 409 So.2d at 1210.

. Id.; see also 79 C.J.S. Schools & School Districts § 494 d. (1952); Gammon v. Edwardsville Community Unit School District No. 7, 82 Ill.App.3d 586, 38 Ill.Dec. 28, 403 N.E.2d 43 (1980).

. The United States Court of Appeals, Fifth Circuit, has recently approved the exploratory canine sniffing of student cars and lockers, noting the analogy between the court-created doctrine of “public smell,” and the “public view” exclusion from Fourth Amendment coverage; but the court disapproved sniffing by the dogs of the students’ persons in the manner involved in the case. Horton v. Goose Creek Independent School District, supra, footnote 6.

. As noted previously, warrants are not always needed by school officials who are acting with reasonable suspicion in pursuance of the public’s legitimate interests in maintaining order, discipline, safety, and education. Bilbrey, supra at 28. We note, parenthetically, that this search of an automobile in a public school parking lot would also appear justified based on “exigent circumstances under the automobile exception to the Fourth Amendment’s warrant requirements.” Cardwell v. Lewis, 417 U.S. 583, 593-596, 94 S.Ct. 2464, 2470-2472, 41 L.Ed.2d 325 (1974); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), reh. denied, 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94. See, further, opinion of the Fourth District, State v. Melendez, 392 So.2d 587, 589 (Fla. 4th DCA 1981), noting, in footnote 2, the question as to the continued viability of the exigent circumstances requirement as applied to vehicle searches.