891 So.2d 1221 (2005)
S.V.J., Appellant,
v.
STATE of Florida, Appellee.
No. 2D04-1246.
District Court of Appeal of Florida, Second District.
February 4, 2005.
*1222 James Marion Moorman, Public Defender, and Timothy J. Ferreri, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Elba Caridad Martin, Assistant Attorney General, Tampa, for Appellee.
SILBERMAN, Judge.
S.V.J. appeals the Juvenile Probation Order entered following her no contest plea to possession of marijuana. She argues that the trial court erred in denying her dispositive motion to suppress the marijuana found in her purse. We agree and reverse.
S.V.J. attended Brandon Alternative School, a school for students exhibiting disruptive behavior. In the afternoon of December 8, 2003, S.V.J. and another student engaged in a fight. The school resource officer separated the students and took S.V.J. to an administrator's office. Mr. Arroyo, an administrative assistant at the school, testified that after he spoke briefly with S.V.J., he stepped out of his office for a short time to check on the flow of traffic in the hallway. When he re-entered the office, S.V.J. "looked startled" or "surprised" and put her purse under her arm and her jacket over her shoulder. He stated that "[i]t appeared she was hiding her purse." Although he normally did not search students after a fight, he decided to have a female school official search S.V.J.'s purse. The search revealed marijuana inside the purse.
Mr. Arroyo acknowledged that no complaint had been made regarding S.V.J. and a weapon, any drug use, or sales; he had *1223 no idea what might have been in the purse; and the only reason he had someone search the purse was because of S.V.J.'s startled reaction when he re-entered the office. The person who performed the search testified that she did so upon Mr. Arroyo's instruction and that she did not know what might be in the purse. At the conclusion of the testimony, the trial court denied the motion to suppress. The court stated that based on the school environment, the fight, and S.V.J.'s demeanor, the search was reasonable at its inception and in scope.
Although we "defer to the factual findings of the trial court that are supported by competent, substantial evidence," we review the court's application of the law to its factual findings using the de novo standard of review. Cillo v. State, 849 So.2d 353, 354 (Fla. 2d DCA 2003). For school searches, reasonable suspicion is needed to justify the search. State v. Whorley, 720 So.2d 282, 283 (Fla. 2d DCA 1998); A.S. v. State, 693 So.2d 1095, 1095 (Fla. 2d DCA 1997). For reasonable suspicion to exist, the search "must be justified at its inception, and the search must be reasonably related in scope to the reason for the search." Whorley, 720 So.2d at 283; see also New Jersey v. T.L.O., 469 U.S. 325, 341, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).
A court may use various factors to determine whether a search is justified at its inception. Such factors may include
the child's age, history and record in school; the prevalence and seriousness of the problem in the school to which the search was directed; the exigencies in making a search without delay and further investigation; the probative value and reliability of the information used as a justification for the search; and the particular teacher or school official's experience with the student.
State v. D.T.W., 425 So.2d 1383, 1387 (Fla. 1st DCA 1983). In A.B. v. State, 440 So.2d 500, 501 (Fla. 2d DCA 1983), this court stated that these factors are simply a starting point and "not a complete and exhaustive list of all possible considerations." The court noted that the "experience of the involved school officials with the type of problem to which the search was directed" would be another pertinent factor to consider. Id.
Ordinarily, a search of a student by a school official is "`justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." T.L.O., 469 U.S. at 341-42, 105 S.Ct. 733. The State must "elicit specific and articulable facts which, when taken together with rational inferences from those facts, reasonably warrant the intrusion." A.H. v. State, 846 So.2d 1215, 1216 (Fla. 5th DCA 2003). A "gut feeling" or hunch that something is wrong does not constitute a reasonable suspicion to justify the search.
Based on the testimony presented at the suppression hearing, S.V.J. argues, and we agree, that the State did not elicit specific and articulable facts that warranted the search. Although the school is for children exhibiting disruptive behavior and students at the school are routinely searched upon arrival for possible weapons, the search of S.V.J. did not occur as part of the arrival procedure. Mr. Arroyo described S.V.J.'s movement and demeanor immediately prior to the search, but he acknowledged that he had no idea what S.V.J. might have had in her possession. He did not give any indication of what he suspected might be in the purse or why the search might reveal evidence of a violation of the law or school rules. None of the witnesses articulated any facts demonstrating *1224 a reasonable suspicion that S.V.J. may have been in possession of a weapon, drugs, or other contraband or even that the contents of her purse were somehow connected with the fight.
As acknowledged in A.B., a court may consider various factors in determining whether a search of a student is justified. Here, the evidence simply did not justify the search. Instead, the evidence showed that the search was conducted based on a mere hunch that S.V.J. might have something of interest in her purse.[1] Because the motion to suppress should have been granted, we reverse the Juvenile Probation Order and remand with directions that the trial court discharge S.V.J. Reversed and remanded with directions.
NORTHCUTT, J., Concurs.
VILLANTI, J., Dissents with opinion.
VILLANTI, Judge, Dissenting.
Because my review of the record and law supports the trial court's order denying the motion to suppress, I respectfully dissent.
The majority's decision is based primarily upon its conclusion that "the State did not elicit specific and articulable facts that warranted the search." Although I agree it would have been helpful for the State to present a more detailed picture of the facts preceding the search, including the exact manner in which generic searches are conducted at the onset of each day, this deficiency does not require reversal of the trial court's denial of the motion to suppress as a matter of law.
The facts in evidence, particularly considered under the totality of the circumstances, amply support the denial of the motion to suppress. For example, although not specifically noted by the majority, during the time when Mr. Arroyo stepped out of the room to supervise hallway traffic, S.V.J. and another student were left unattended. In my view, as undoubtedly the trial court's, that fact was not insignificant. During that interlude it is not difficult to imagine the prospect of improper conduct occurring by one or both of these students. Although it was not routine procedure to search students following a fight, there is no indication these students were aware of that fact and were not conspiring to get rid of evidence certain to be discovered at what they perceived was an imminent search. The fact that these students were both attendees at an alternative school, which by definition catered to disruptive students, only heightens the reasonableness of the ensuing search, independent of the fact that the post-fight discipline/review had not even begun.
S.V.J.'s startled look when Mr. Arroyo returned, coupled with her immediate attempted concealment of her purse, under these circumstances, connotes more than innocuous behavior. Mr. Arroyo's eighteen *1225 years of experience, facing "daily challenges" with unruly students, including "[s]tudents bringing in blades, knives, becoming violent on site, these types of situations," would naturally cause him to assess S.V.J.'s behavior as giving rise to suspicion that something was amiss. As succinctly put by the trial court, "[f]rom [S.V.J.'s] entire demeanor, everything told [Mr. Arroyo] that he had reason to be concerned." This is substantial, competent evidence supporting the trial court's determination that Mr. Arroyo had reasonable suspicion, and thus the trial court's order should be upheld. See San Martin v. State, 717 So.2d 462, 469 (Fla.1998).
The majority, in effect, applies a stricter standard than the law mandates, requiring school personnel to have the same level of training as police officers to ferret out  and articulate under oath  those details police officers have learned will give rise, legally, to "reasonable suspicion." Common sense tells us that what is meant legally by "reasonable suspicion" will not always translate perfectly in the school setting where a fair-minded teacher or administrator is attempting to provide enough order that education may take place, not patrol the hallways in search of those who are in breach of the peace. "[M]aintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures.... It is evident that the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject." New Jersey v. T.L.O., 469 U.S. 325, 340, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).
Additionally, to require Mr. Arroyo to identify the exact rule or statute S.V.J. was suspected of violating would not be a reasonable application of the flexible standard T.L.O. says we should apply. Mr. Arroyo's reasonable suspicion was not based on a whim or "mere hunch" but was the result of his perception of S.V.J.'s furtive movements to conceal her purse and startled look through the lens of his eighteen years of experience dealing with troubled students. "[S]chool authorities have a layman's familiarity with the types of crimes that occur frequently in our schools: the distribution and use of drugs, theft, and even violence against teachers as well as fellow students." T.L.O., 469 U.S. at 350 n. 1, 105 S.Ct. 733 (Powell, J., concurring). In other words, S.V.J's conduct was consistent with a myriad of improper purposes, and the fact that Mr. Arroyo could not specifically state which violation S.V.J.'s conduct showed she was trying to hide does not make his layman's suspicion any less valid. "A teacher's focus is, and should be, on teaching and helping students, rather than on developing evidence against a particular troublemaker." Id. at 353, 105 S.Ct. 733 (Blackmun, J., concurring).
Finally, there is another ground to uphold the search. Because students at this school are subject to search upon entering each morning, I see no reason to require reasonable suspicion for further searches during the day. The alternative nature of this school required Fourth Amendment waiver, implicitly or explicitly, as a condition of admission. There was, simply put, no genuine expectation of privacy to protect here. Cf. Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 657, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) (noting that students have a lesser expectation of privacy than members of the general population and that student athletes (a subclass of regular students) have an even lesser expectation). If students at an ordinary school have a lesser expectation of privacy than members of the general population, it necessarily follows that students who have been selected for inclusion, because of their disruptive, risk-provoking behavior, for placement at an alternative school have *1226 an even lesser expectation of privacy. Thus, the search for contraband should not be protected under the circumstances of this case. To do so would place alternative schools on the same footing as mainstream schools, which would clearly defy the purpose of having an "alternative" school in the first place.
NOTES
[1] Although the dissent suggests that "it is not difficult to imagine the prospect of improper conduct," criminal and delinquency proceedings are determined based on the evidence and not the fact finder's or the reviewing court's imagination. The dissent also states that students in an alternative school, who are searched upon arrival at school, have no genuine expectation of privacy protecting them from subsequent searches. Yet in T.L.O. the Supreme Court specifically acknowledged that it was "not yet ready to hold that the schools and the prisons need be equated for purposes of the Fourth Amendment" and reiterated that schoolchildren have "legitimate expectations of privacy." 469 U.S. at 338-40, 105 S.Ct. 733. The dissent cites no evidence or authority supporting its view that students in an alternative school are subject to search at any time throughout the course of the school day merely because they are subject to being searched upon arrival at school. Based on the evidence that was presented in the trial court and the current state of the law, we cannot agree with the dissent's proposition.